THOMAS EDWIN ALLAIRE

*v.*

THE ST. LUKE'S HOSPITAL *et al.*

*Opinion filed February 19, 1900.*

ACTIONS AND DEFENSES—*action does not lie for injuries to plaintiff before birth.* An action does not lie to recover damages for an injury to the plaintiff while in his mother's womb, since the right is not given by statute, and the courts of common law, while indulging the legal fiction that an unborn child may be regarded as *in esse* for some purposes, when for its benefit, have never gone to the extent of sustaining an action by an infant for injuries occasioned before its birth. (BOGGS, J., dissenting.)

*Allaire* v. *St. Luke's Hospital*, 76 Ill. App. 441, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.

The amended declaration in this case, omitting the caption, is in the words and figures as follows:

"The said plaintiff, Thomas Edwin Allaire, an infant of tender age, by Ada A. Allaire, his next friend, and Philetus Smith, his attorney, by leave of the court first had, for amended declaration, complains of the said defendants, both bodies politic and corporate, and doing business at the city of Chicago, in said county, under and by virtue of the laws of said State, in a plea of trespass on the case; for that, heretofore, to-wit, on or about the second day of February, A. D. 1896, at and in the said city, said defendants were possessed of and using a certain building there situate, as a hospital for the care, curing and treatment of sick persons, and of ladies therein, during the time before, at and after accouchement and parturition and of convalescence thereafter, and for the care, careful treatment and medical diligence in the safe delivery of infants *in ventre de sa mere*, all for hire and

reward in that behalf. The said Ada A. Allaire, then within ten days, as near as may be, for the natural birth of plaintiff, as the said defendants then and there well knew and had knowledge, then and there, on said last named day, at the request and solicition of the said defendants, for hire and reward in that behalf to be paid by her, became and was a patient of said defendants in the said building, therein to be carefully kept, cared for, housed and medically treated until the birth of plaintiff and during her convalescence thereafter, and for such hire and reward so to be paid then and there became and was such patient of defendants, for the use and benefit of plaintiff, in that he also should receive from said defendants all due care and treatment, and should be safely delivered by birth, in the course of nature, without personal harm. And thereupon it then and there became and was the duty of defendants to carefully and comfortably house, shelter and keep the said Ada A. Allaire in said building, and to extend to and bestow upon her person great care and diligence, before, during and after plaintiff's birth,—all this for the well-being of the said Ada A. Allaire as also for the benefit of the plaintiff, to the end and purpose that he also should receive great and due care from said defendants and be naturally born of his mother without injury or harm to his person.

"And the plaintiff further avers, that before, on and after the day first aforesaid, at and in the said building, the said defendants were possessed of and using a certain elevator, so-called, for the conveyance of patients therein through a shaft from one floor of said building to other floors therein, and the said Ada A. Allaire, then being such patient, as aforesaid, on said day last named, and in obedience to defendants' request and direction so to do, entered into such elevator and upon the floor thereof, and then and there sat down upon a common, all-wooden chair on said floor that had there been placed in its then position by defendants, to be carried and ele-

vated thereon from the second floor of said building to
the floor of the obstetrical department thereof above said
second floor, she then and there being assured by defend-
ants that it was and would be perfectly safe for her to
be seated in said chair in its then position, to be carried
upward in said elevator, and that no harm could come to
her for so doing, defendants then and there well know-
ing that said Ada A. Allaire was then and there near to
confinement for the natural birth of plaintiff. And there-
upon it became and was the duty of defendants to have
and keep said elevator and shaft, and each and every
part thereof, in a proper, safe and secure condition, and
keep the said mother of plaintiff, and the plaintiff, safely
and without personal harm or injury in the use and en-
joyment thereof, and to so place and condition the said
mother therein and upon said floor and chair, as that
neither she nor the plaintiff, then *in ventre de sa mere*,
should in any way be injured or personally harmed while
therein and being carried thereby to said floor above,
whither the said mother was then and there directed by
defendants, yet the defendants did not nor would regard
their duty in that behalf, but, on the contrary thereof,
negligently and carelessly, at the place and on the day
last named, and when and while the said mother of plain-
tiff, with all due care on her part, was then and there so
conditioned and seated in said chair and being rapidly
carried upward in said elevator, failed and neglected to
have and keep said shaft, elevator and chair in a safe
and secure condition and position and to have and keep
the car of the said elevator enclosed, and then and there
carelessly, negligently and heedlessly failed to properly
load and operate said elevator, and did then and there
so carelessly and negligently operate the same that when
and while the said Ada A. Allaire was so being rapidly
carried upward therein and thereon, the top of said chair
suddenly and with great force struck a projection in and
on the side of said shaft, whereby said chair, with said

mother thereon sitting, was instantly and with great
power crushed to the floor of said elevator car, the said
car then and there being unenclosed and open, and said
mother of plaintiff, and the plaintiff, then and there with
great force and violence thrown and hurled from and off
said chair to the floor of said car and to the edge of said
floor opposite said chair, and by reason thereof and the
swift upward motion of said elevator car the left limb
of said mother was then and there and thereby thrown
and caught between the edge of said floor and a projec-
tion in said shaft, and was then and thereby greatly cut,
mangled, bruised and the bones thereof broken, and said
mother greatly and grievously bruised, hurt, jammed and
wounded in her left hip, thigh, side and body, and other
great personal injuries, by reason of said negligence of
defendants, said Ada A. Allaire then and thereby received
and sustained, and that said mother, by reason of her
said personal injuries, and the manner, way and time in
which the same were so received and sustained, was then
and there put in great terror and fear that death was
then for herself and plaintiff unborn, so that and there-
by, and as the direct, proximate and natural cause of
said injuries to his said mother, said plaintiff was then
and there, and by reason of defendants' said negligence,
greatly injured, strained, bruised, wounded in his left
limb, left side, left hip, left arm and left hand, so that at
his birth, on the sixth day of February, A. D. 1886, his
left foot, left limb, left side and left hand were and be-
came, and hitherto have been and still are, wasted, with-
ered and atrophied, and his said foot smaller than natural
by more than one-half, and made thereby to turn inward
and the sole thereof upward, and his said limb shorter
than natural by more than four inches, and his said hip,
side and arm, by reason of said negligence and injuries,
became and are made shrunken, atrophied and paralytic,
and his said limb without flesh thereon, and from thence
hitherto have so been and still are, and said plaintiff

thereby greatly and sadly crippled for life, and in endeavoring to be cured and healed of his said injuries has laid out and expended the sum of two thousand dollars ($2000) and more, (the said Ada A. Allaire having heretofore, for a valuable consideration, settled with the said defendants for and released them from all damages for said injuries to herself alone,) to the damage of plaintiff in the sum of fifty thousand dollars ($50,000,) and therefore he brings his suit," etc.

The general demurrer was filed by the defendants, which was sustained by the court and judgment was rendered for the defendants. An appeal was thereupon taken to the Appellate Court, where the judgment of the lower court has been affirmed. The present appeal is from such judgment of affirmance.

PHILETUS SMITH, for appellant:

As tending to direct judicial thought to the controlling question in this case, yet without settling it and with little regard to logical order, we cite *pro* and *con* the following cases and authorities: *Thellusson* v. *Woodford,* 4 Ves. Jr. 227; 1 Blackstone's Com. 130; *Blasson* v. *Blasson,* 2 DeG., J. & S. 665; 1 Blackstone, (Brown & Hadley's Com. Waite's Notes) 105; American Text Book of Obstetrics, (ed. of 1895) 925; 2 Witthaus & Becker's Med. Juris. (1894,) 378, *et seq.; Phillips* v. *Herron,* 45 N. E. Rep. 720; *Turley* v. *Turley,* 11 Ohio St. 173; *McArthur* v. *Scott,* 113 U. S. 340; Const. 1870, sec. 19, art. 2, Bill of Rights; *Dietrich* v. *Inhabitants,* 138 Mass. 14; *Walker* v. *Railway Co.* 28 L. R. (Ire.) 69; *The George & Richard,* L. R. 3 Adm. & Eccl. 466; *Nelson* v. *Railway Co.* 78 Tex. 621; *Blake* v. *Railroad Co.* 18 Q. B. 93; Lord Campbell's Act, 9 and 10 Vic. chap. 93.

An infant *en ventre sa mere* is supposed, in law, to be born for many purposes. It is capable of having a legacy or a surrender of a copy-hold estate made to it. It may have a guardian assigned to it, and it is enabled to have an estate limited to its use, and to take afterwards by

such limitation, as if it were actually born. *Thellusson* v. *Woodford*, 4 Ves. Jr. 227; Blackstone's Com. 130.

In the case of *Phillips* v. *Herron*, 45 N. E. Rep. 72, it was held that a child quick *in utero* is a person in being.

Life is the immediate gift of God—a right inherent by nature in every individual; and it begins, in contemplation of law, as soon as the infant is able to stir in its mother's womb. 1 Blackstone's Com. 130.

Our claim is, that "the rights of persons" and "the rights of things" are absolutely inter-dependent and inseparable; that it is, in effect, a contradiction of terms to say that a person may have "the rights of things" and not "the rights of persons." "Every *person* ought to find a certain remedy in the laws for *all* injuries and wrongs which he may receive in his *person*, property or reputation. He ought to obtain, by law, right and justice freely and without being obliged to purchase it, completely and without denial, promptly and without delay." Const. 1870, sec. 19, art. 2, Bill of Rights.

LYNDEN EVANS, for appellees:

There is no statute nor any common law authority to sustain this action. *Dietrich* v. *Inhabitants*, 138 Mass. 14; *Walker* v. *Railway Co.* 28 L. R. (Ire.) 69; Francis' Legal Maxims, Preface.

The alleged analogy in chancery, although academic, is inapplicable. Grotius de Equitate, sec. 3; *Heard* v. *Stamford*, Cas. *temp.* Talb. 173; Pomeroy's Eq. Jur. sec. 425; Story's Eq. Jur. sec. 616; 10 and 11 William III, chap. 16; *Palmer* v. *Cracroft*, 2 Vern. 580.

The alleged analogy from criminal law is inapplicable. Hale's P. C. 433; *Rex* v. *Enoch*, 5 C. & P. 539; *Rex* v. *Brain*, 6 id. 349; *Rex* v. *Poulton*, 5 id. 329; 4 Blackstone's Com. 198; Year Books, 1 Edw. III, 23, pl. 18; Fitz. Abr. pl. 4; 1 Fleta, chap. 35, sec. 3; Crim. Code, sec. 3.

The alleged analogy from civil, ecclesiastical and admiralty law is inapplicable. Wharton on Negligence,

(ed. of 1874) sec. 9*a*, 10; Benedict on Administrators, 58, secs. 111-113.

The declaration fails to show any legal duty of the defendants, as a hospital, to the plaintiff, or any breach thereof. *Feoffees* v. *Ross*, 12 C. & F. 506; *Railway Co.* v. *Artist*, 60 Fed. Rep. 365; *Holliday* v. *St. Leonards*, 11 C. B. (N. S.) 192; *Gooch* v. *Association*, 109 Mass. 567; *McDonald* v. *Hospital*, 120 id. 432; *Hughes* v. *Monroe*, 4 N. E. Rep. 407; *Williamson* v. *Louisville, etc.* 15 Ky. 629; *Downs* v. *Harper*, 25 L. R. A. 602; *Joel* v. *Woman's Hospital*, 35 N. Y. Sup. 37.

The plaintiff is estopped by the settlement with his mother. 16 Am. & Eng. Ency. of Law, 476; *Dietrich* v. *Inhabitants*, 138 Mass. 17; 1 Fleta, chap. 35, sec. 2.

Per CURIAM: In deciding this case the Appellate Court delivered the following opinion:

"The action is not given by any statute, and if maintainable it must be so by the common law, and, therefore, the question is whether, at common law, the action can be maintained. Had the plaintiff, at the time of the alleged injury, in contemplation of the common law, such distinct and independent existence that he may maintain the action, or was he, in view of the common law, a part of his mother? If the former, it would seem the action can be maintained; but if the latter, not, because, if a part of his mother, the injury was to her and not to the plaintiff.

"Appellant's counsel has argued the case learnedly and with not a little industry, but has cited only two cases in which it was attempted to maintain actions involving the question presented here, namely, *Dietrich, Admr.* v. *Inhabitants, etc.* 138 Mass. 14, (decided in 1884,) and *Walker* v. *Great Northern Railway Co.* 28 L. R. Ire. 69, (decided in 1891.) In the former case the facts were, that the mother, when advanced four or five months in pregnancy, slipped and fell by reason of a defect in the highway, the consequence of which was a miscarriage. The plaintiff was

alive when delivered, but was too little advanced in fœtal life to survive its premature birth.  The action was brought by the administrator of the deceased infant under a statute authorizing an action for the benefit of the mother or next of kin.  The trial and Supreme Courts both held that the action could not be maintained, the latter court saying: 'Taking all of the foregoing considerations into account, and further, that *as the unborn child was a part of the mother at the time of the injury,* any damage to it which was not too remote to be recovered for at all was recoverable by her, we think it clear that the statute sued upon does not embrace the plaintiff's intestate, within its meaning.'

"In *Walker* v. *Great Northern Railway Co.* the statement of claim was, substantially, that Annie Walker, mother of the plaintiff, while quick with child, became a passenger on the defendant's railway and was so received by the defendant, and that the defendant so carelessly and negligently conducted itself in carrying said Annie Walker and in managing its railway, that the plaintiff was thereby injured, crippled and deformed.  A demurrer was sustained to the statement of claim, all the judges concurring in the opinion that it was defective in not showing a contractual relation between the plaintiff and the railway company, but merely averring a contract between the mother of the plaintiff and the company.  The question, however, whether such an action could be maintained by an infant in its mother's womb at the time of the alleged injury could under any circumstances be maintained, was discussed elaborately and with great learning both by court and counsel.  O'Brien, C. J., after discussing the question, expressly declined to commit himself by an opinion, leaving it, as he said, 'an open question,' so far as he was concerned.  Harrison, J., while basing his decision on the insufficiency of the statement of claim, says in his opinion: 'When the accident occurred on the 12th of June the plaintiff was still un-

born and had no existence apart from her mother, who was the only person whom the defendants contracted to carry on their line,' etc.    Johnson, J., in his opinion says: 'As a matter of fact, when the act of negligence occurred the plaintiff was not *in esse*,—was not a person or a passenger or a human being.  Her age and her existence are reckoned from her birth, and no precedent has been found for this action.'    Again, commenting on the claim of liability, the same learned judge says:  'If it did not spring out of contract, it must, I apprehend, have arisen, if at all, from the relative situation and circumstances of the defendant and plaintiff at the time of the occurrence of the act of negligence.    But at that time the plaintiff had no actual existence,—was not a human being and was not a passenger in fact; as Lord Coke says, the plaintiff was then *pars viscerum matris*, and we have not been referred to any authority or principle to show that a legal duty has ever been held to arise toward that which was not *in esse* in fact and has only a fictitious existence in law, so as to render a negligent act a breach of duty.'    O'Brien, Associate J., in his opinion says of the action:    'It is admitted that such a thing was never heard of before, and yet the circumstances which would give rise to such a claim must at one time or another have existed.'    In *Dietrich* v. *Inhabitants, etc. supra*, the court says:  'But no case, so far as we know, has ever decided that if the infant survived it could maintain an action for injuries received by it while in its mother's womb.'

"Appellant's counsel substantially admits that there is no precedent for the action.    While it is true that this is not conclusive that the action may not be maintained, yet in view of the fact that, as said by Mr. Associate Justice O'Brien, similar circumstances must have before occurred, it is entitled to great weight, especially when the right to maintain the action is, to say the least, doubtful.  Mr. Associate Justice O'Brien, in *Walker* v. *Great Northern Railway Co.* says: 'The law is, in some respects, a stream,

that gathers accretions, with time, from new relations and conditions. But it is also a landmark that forbids advance on defined rights and engagements; and if these are to be altered,—if new rights and engagements are to be created,—that is the province of legislation and not decision.' In this we fully concur. That a child before birth is, in fact, a part of the mother and is only severed from her at birth, cannot, we think, be successfully disputed. The doctrine of the civil law and the ecclesiastical and admiralty courts, therefore, that an unborn child may be regarded as *in esse* for some purposes, when for its benefit, is a mere legal fiction, which, so far as we have been able to discover, has not been indulged in by the courts of common law to the extent of allowing an action by an infant for injuries occasioned before its birth. If the action can be maintained, it necessarily follows that an infant may maintain an action against its own mother for injuries occasioned by the negligence of the mother while pregnant with it. We are of opinion that the action will not lie. The judgment will be affirmed."

We concur in the foregoing views, and in the conclusion reached by the Appellate Court. Accordingly, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE BOGGS, dissenting:

It may be conceded no case adjudicated at the common law can be found wherein a plaintiff was awarded damages for injuries inflicted upon his person whilst in the womb of his mother. But an adjudicated case is not indispensable to establish a right to recover under the rules of the common law. Lord Mansfield declared: "The law of England would be an absurd science were it founded upon precedents only. Precedents," he observed, "were to illustrate principles and to give them a fixed certainty." (1 Kent's Com. 477.) In speaking of the establishment and growth of rights at the common law,

Mr. Cooley, in his work on Torts, (pp. 13-15,) said: "The process of growth has been something like the following: Every principle declared by a court in giving judgment is supposed to be a principle more or less general in its application, and which is applied under the facts of the case, because, in the opinion of the court, the facts bring the case within the principle. The case is not the measure of the principle. It does not limit and confine it within the exact facts, but it furnishes an illustration of the principle, which, perhaps, might still have been applied had some of the facts been different. Thus, one by one, important principles become recognized through adjudications which illustrate them and which constitute authoritative evidence of what the law is when other cases shall arise. But cases are seldom exactly alike in their facts. They are, on the contrary, infinite in their diversities; and as numerous controversies on differing facts are found to be within the reach of the same general principle, the principle seems to grow and expand, and does actually become more comprehensive, though so steadily and insensibly, under legitimate judicial treatment, that for the time the expansion passes unobserved. But new and peculiar cases must also arise from time to time, for which the court must find the governing principle, and these may either be referred to some principle previously declared, or to some one which now, for the first time, there is occasion to apply. But a principle newly applied is not supposed to be a new principle. On the contrary, it is assumed that from time immemorial it has constituted a part of the common law of the land, and that it has only not been applied before because no occasion has arisen for its application."

At the common law actions were maintainable to recover damages occasioned by injuries to the person of the plaintiff, whether inflicted intentionally or through the negligence of the defendant. The governing principle illustrated by such cases is, that the common law,

184—24

by way of damages, gave redress for personal injuries inflicted by the wrong or neglect of another. The case disclosed by the declaration under consideration is em-braced within the limits of the principle thus recognized, and it is clear recovery could have been maintained at common law unless the fact the plaintiff was unborn when the alleged injuries were inflicted would have op-erated to deny a right of action. The argument is, that at the common law an unborn child was but a part of the mother, and had no existence or being which could be the subject matter of injury distinct from the mother, and that an injury to it was but an injury to the mother; that in such case there was but one person—one life,—that of the mother. A foetus in the womb of the mother may well be regarded as but a part of the bowels of the mother during a portion of the period of gestation; but if, while in the womb, it reaches that pre-natal age of viability when the destruction of the life of the mother does not necessarily end its existence also, and when, if separated prematurely and by artificial means from the mother, it would be so far a matured human being as that it would live and grow, mentally and physically, as other children generally, it is but to deny a palpable fact to argue there is but one life, and that the life of the mother. Medical science and skill and experience have demonstrated that at a period of gestation in ad-vance of the period of parturition the foetus is capable of independent and separate life, and that though within the body of the mother it is not merely a part of her body, for her body may die in all of its parts and the child remain alive and capable of maintaining life when separated from the dead body of the mother. If at that period a child so advanced is injured in its limbs or mem-bers and is born into the living world suffering from the effects of the injury, is it not sacrificing truth to a mere theoretical abstraction to say the injury was not to the child but wholly to the mother?

A child *in ventre sa mere* was regarded at the common law as *in esse* from the time of conception for the purpose of taking any estate, whether by descent or devise, or under the statute of distribution if the infant was born alive after such a period of foetal existence that its continuance in life was or might be reasonably expected. (10 Am. & Eng. Ency. of Law, 624; Coke's Litt. 36.) Blackstone, after declaring the right of personal security to be an absolute right, says: "The right of personal security consists in a person's legal and uninterrupted enjoyment of his life, his limbs, his body, his health and his reputation. Life is the immediate gift of God,—a right inherent by nature in every individual; and it begins, in contemplation of law, as soon as an infant is able to stir in the mother's womb. For if a woman is quick with child, and by a potion or otherwise killeth it in her womb, or if any one beat her, whereby the child dieth in her body and she is delivered of a dead child, this, though not murder, was by the ancient law homicide or manslaughter."

Though it was the rule of the common law if one should unlawfully beat a woman pregnant with child, and thereby cause the child to die in the body of the mother, the crime was not deemed to be murder but the ancient crime of homicide or manslaughter, still the doctrine of the common law was, if the child should not die in the womb of the mother but should be born alive, and should afterwards die in consequence of the assault while in the womb of the mother, the offense was deemed to be murder. (3 Inst. 50; 1 P. Wms. 345.) If, in the contemplation of the common law, life begins as soon as the infant is able to stir in the mother's womb, and that an injury inflicted upon an infant while in the womb of the mother shall be deemed murder if the infant survive the wound during pre-natal life but succumbs to it and dies from it after being born, and if every legitimate infant *in ventre sa mere* is to be deemed as born for all purposes beneficial to the child, why should it be supposed the common law

would have denied to an infant born alive the right to recover damages for the injury inflicted upon it while in the womb of the mother? Had such injury, though inflicted on the child while in the mother's womb, been sufficient to cause the death of the infant after it had been born alive, the common law would have regarded the injury as having been inflicted upon a human being and punished the perpetrator accordingly; and that being true, why should the infant which survives be denied the right to recover damages occasioned by the same injury? In the case at bar the infant, when the injury was inflicted, had, as the declaration alleged, reached that advanced stage of foetal life which would have, according to the experience of mankind and according to the medical learning of the age, endowed it with such vitality and vigor, and with members and faculties so far complete and mature, that it could have maintained independent life and the death of the mother would not have deprived it of life. It is but natural justice that such an infant, if born alive, should be allowed to maintain an action in the courts for injuries so wrongly committed upon its person while so in the womb of the mother.

Two cases are much relied upon as in opposition to this view. One is the case of *Dietrich* v. *Inhabitants*, 138 Mass. 14. The facts there were: A woman four or five months advanced in pregnancy slipped and fell by reason of a defect in the highway, in consequence of which there was a miscarriage. The child was alive when delivered, but was too little advanced in foetal life to survive its premature birth and died before it was severed from its mother. The person of the infant was not directly injured otherwise than by a communication of the shock to the mother, and it was held an action to recover damages did not accrue to an administrator of the child. This case can have little application here, for the reason in the case at bar it appears from the declaration the child had reached that stage of foetal life when it was ca-

pable of continued existence independent of the mother; that its person was injured within itself, and it was afterwards born alive and with sufficient strength and maturity to maintain independent existence, and still lives. It does not follow from the *Dietrich case* the plaintiff in this cause should not be recognized as capable of having a *locus standi* in court to recover damages for injuries to his person, or that the Supreme Court of Massachusetts would have so held.

The other case is that of *Walker* v. *Great Northern Railway Co.* 28 L. R. (Ire.) 69, in which the facts were: A woman far advanced in pregnancy took passage on defendant's railway. There was an accident to the train whereby the mother and the child were seriously injured, so that the child was born a cripple. The action was by the child to recover damages, and on demurrer the court held the suit could not be maintained. The cause could only have been sustained on the ground the defendant road had failed to observe some duty it owed to the child arising generally by reason of its position as a common carrier or of some contract with the child. The declaration did not disclose the railroad company had knowledge of the existence of the child or of the condition of the mother, or that there was any contract with reference to the carriage of the child or any consideration paid for such carriage. The ruling of the court that the railway company was not answerable to the child can have no influence adverse to the plaintiff in the case at bar. Here the appellee hospital knew of the condition of the mother and of the existence of the plaintiff in her womb, contracted with direct reference to the safety and care of both mother and child, and received compensation for the performance of a duty to both.

If in delivering a child an attending physician, acting for a compensation, should wantonly or by actionable negligence injure the limbs of the infant, and thereby cause the child, although born alive and living, to be

maimed and crippled in body or members, it would be abhorrent to every impulse of justice or reason to deny to such a child a right of action against such physician to recover damages for the wrongs and injuries inflicted by such physician. The appellee corporation owed it as a duty to the plaintiff, though unborn, to bestow due and ordinary care and skill to the matter of his preservation and safety, before and at the time of his birth. · It appeared from the declaration that duty was neglected, and that the limbs and body of plaintiff received injuries by reason of such negligence, and that his legs and arms are now maimed and crippled by reason thereof. Should compensation for his injuries be denied on a mere theory, known to be false, that the injury was not to his person but to the person of the mother? The law should, it seems to me, be, that whenever a child *in utero* is so far advanced in pre-natal age as that, should parturition by natural or artificial means occur at such age, such child could and would live separable from the mother and grow into the ordinary activities of life, and is afterwards born and becomes a living human being, such child has a right of action for any injuries wantonly or negligently inflicted upon his or her person at such age of viability, though then in the womb of the mother. That proposition having been established, that an adjustment of damages with the mother could not preclude the child would naturally and necessarily follow.

The argument there can be no certainty an unborn child is dead or alive when an injury is inflicted upon the mother is answered by the allegations of the declaration that the plaintiff was born alive and is a living human being. There was, therefore, no uncertainty as to the fact the plaintiff was alive in the mother's womb when the injuries were inflicted.