DARWIN STEGGALL, By His Next Friend, Maurice Steggall; and BARBARA STEGGALL, By Her Next Friend, Maurice Steggall, Appellants, v. SAM MORRIS, Respondent, No. 43436—258 S. W. (2d) 577.

Court en Banc, June 8, 1953.

*Edwards, Hess.& Collins* for appellants.

1226

*L. F. Cottey* and *Allen Rolston* for respondent.

WESTHUES, C.—Plaintiffs, Darwin and Barbara Steggall, are husband and wife. Being under 21 years of age, they filed this suit by a guardian, Maurice Steggall, appointed for that purpose. The suit was based on Section 537.080, RSMo 1949, VAMS.

Plaintiffs [578] seek $15,000 as damages for the wrongful death of their son.

It was alleged in the petition that on May 2, 1952, Barbara Steggall was driving a car on the streets of Lancaster, Missouri; that the defendant, Sam Morris, was at the time driving a car and failed to observe a "STOP" sign; that he was negligent in permitting his car to collide with the Steggall car and thereby caused injury to Barbara and to her unborn child; that the child was born alive on May 5, 1952; that it was named James Robert Steggall. It was alleged that as a result of the injuries received in the collision of the cars the child died on May 23, 1952. The petition further alleged "that at the time of the accident hereinafter described said James Robert Steggall was a viable infant en ventre sa mere and was capable of living outside his mother's uterus, * * *."

The trial court sustained a motion to dismiss plaintiffs' petition on the theory that no cause of action had been stated. More to the point, the court held that a viable child en ventre sa mere, injured through the negligence of another, later born alive, and dying as a result of the injuries, is not a "person" within the meaning of Section 537.080, supra, and, therefore, the parents may not maintain a suit in damages for the child's death. From the judgment entered, plaintiffs appealed.

We set forth the statute in full as follows: "Liability for wrongful death generally.—Whenever the death of a person shall be caused by a wrongful act, neglect or default of another, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured."

 The statute, in our opinion, is unambiguous. Stating its effect in reverse, it means that any tort-feasor who would be liable in damages to a person injured would likewise be liable in damages for the death of such person in case death resulted from such injury. 25 C.J.S. 1091, Sec. 24. The difficulty arises in determining whether a viable child en ventre sa mere is a person within the meaning of the statute. The precise question before us is whether a viable child en ventre sa mere injured through the negligence of another, may, after it is born, maintain an action for damages against the tort-feasor.

A suit to recover damages for injuries sustained through negligence is a common law action. We must, therefore, look to the common law to determine the question before us. There is an old, well-recognized axiom of the law, ubi jus, ibi remedium. At com-

mon law a child en ventre sa mere has for many purposes been considered as a person, especially so in the matter of property rights. For the purpose of inheriting property, a posthumous child is considered in esse from the time of its conception. Words and Phrases, Vol. 33, p. 124; State v. Atwood, 54 Or. 526, 102 P. 295, 297; Pearson v. Carlton, 18 S.C. 47, l.c. 55, 56; Bonbrest v. Kotz, 65 F. Supp. 138, l.c. 140 (3); Allaire v. St. Luke's Hospital, 184 Ill. 359, 56 N.E. 638, 641 (dissenting opinion cites Blackstone); 14 C.J.S. 1109.

In 27 Am. Jur. 747, Sec. 3, it is stated that "Biologically speaking, the life of a human being begins at the moment of conception in the mother's womb, * * *. * * .* By a legal fiction or indulgence, a legal personality is imputed to an unborn child as a rule of property for all purposes beneficial to the infant after his birth, but not for purposes working to his detriment."

The question of law before us has received much consideration in late years, both in cases before the courts and in reviews in law journals. The following are a few of these cases and articles which may be perused by those interested in the question: 15 Mo. Law Review 211 and 230; 12 St. Louis U. L. Rev. 85; 63 Harvard L. Rev. 173; 50 Michigan L. Rev. 166; 4 U. of Toronto L. Journal 285; Drobner v. [579] Peters, 232 N.Y. 220, 133 N.E. 567, 20 A.L.R. 1503, Anno. 1505; Magnolia Coca Cola Bottling Co. v. Jordan, 124 Texas 347, 78 S.W. (2d) 944, 97 A.L.R. 1513, Anno. 1524; Williams v. Marion Rapid Transit, Inc., 152 Ohio St. 114, 87 N.E. (2d) 334, 10 A.L.R. (2d) 1051, Anno. 1059; Verkennes v. Corniea, 229 Minn. 365, 38 N.W. (2d) 838, 10 A.L.R. (2d) 634, Anno. 639; Jasinsky v. Potts, 153 Ohio St. 529, 92 N.E. (2d) 809; Allaire v. St. Luke's Hospital, 184 Ill. 359, 56 N.E. 638 (dissenting opinion at p. 640); Buel v. United Rys. Co., 248 Mo. 126, 154 S.W. 71; Bliss v. Passanesi, 326 Mass. 461, 95 N.E. (2d) 206; Dietrich v. Northampton, 138 Mass. 14; Stemmer v. Kline, 128 N.J.L. 455, 26 A. (2d) 489, 684; Damasiewicz v. Gorsuch, Md., 79 A. (2d) 550; Woods v. Lancet, 303 N.Y. 349, 102 N.E. (2d) 691.

After reading the above authorities on the subject of infant en ventre sa mere, we have come to the conclusion that it is not in accordance with the truth to say the law indulges in a fiction when it attributes a legal personality to an unborn child. The above statement is not new. A number of courts and text writers have reached the same conclusion. We call particular attention to the opinion by Justice McGuire in the case of Bonbrest v. Kotz, supra, 65 F. Supp. l.c. 140 (3). The justice there cited many medical authorities to support the statement, "From the viewpoint of the civil law and the law of property, a child en ventre sa mere is, not only regarded as human being, but as such from the moment

of conception—which it is in fact.'' . We do not desire to go beyond the question for decision in. this case. We, therefore, confine our ruling to the facts presented.

The principles of the common law authorize courts to compel a tort-feasor. to compensate a person who has been injured through the negligence of the tort-feasor. 65·C.J.S. 324, Sec. 2. Why, then, may' not· a viable child en.ventre sa mere, injured through the negligence of another, maintain an action in tort after birth, against the tort-feasor? We shall consider a number of the reasons assigned for. denying such right. The case mostly relied on for denying the child a right to recover damages is Dietrich v. Northampton, 138 Mass. 14. The opinion discloses that a woman, four or five·months in pregnancy, was ·injured, causing premature birth of. the child. The ·child lived only a few minutes. The suit was to recover for the· death ·of the child. The court. stressed the fact that .the· child had not reached the stage·of· viability. The case is, therefore,· no authority for the precise question now before this court. However, we call attention to the statement of the court, ''But no case, so .far as we ·know, has ever decided that, if the infant survived, it could maintain ·an action for injuries received by;it while· in its.mother's womb.'' That same reason for denying the child's .right was assigned in other cases. This court in Buel v., United .Rys. Co., supra, 154 S.W. l.c. 72(1), said, ''We ·have not.;been. able. to· find any precedent at common law establishing the right of ·a child injured while en ventre sa mere, but subsequently born .alive, to bring an action thereafter for the injuries so received.'' ·The court followed the Dietrich case, supra. If inability ''to find any precedent at common law'' were a good reason to deny an injured person a remedy, then, indeed, the common law would never ·have reached the embryo stage. Judge Boggs, in his ·dissenting opinion in Allaire v. St. Luke's Hospital, supra, 56 N.E. l.c. 640, demonstrated very effectively the fallacy of that · rule. Lord Mansfield was there quoted as having said, ''The law of ·England ·would be an. absurd science were it founded upon precedents only.''

·Chief Justice Brogan, with whom four other justices agreed in the dissenting opinion in Stemmer v. Kline, supra, 26 A.(2d) 684, l.c. 686, had the following to ·say: ''It is no answer to say that there is· no remedy because a cause of action is not written down in the common law in precise formula. We cannot expect to find it charted in so ·many words. Rather is it implicit in· the common law—else we ·admit that the· law· has no remedy for a grievous wrong.''

In Bonbrest v. Kotz, supra, 65 F. Supp. l.c. 142 (4), the court said, ''The common law is not an arid and sterile thing, and it ·is anything but static and inert.'' We rule. that the theory of no

precedent is not a valid reason for denying a remedy to a person injured.

Another reason urged for denying such action to be maintained is the impossibility of proof. This reason was assigned in a number of cases. See Magnolia Coca Cola Bottling Co. v. Jordan, supra. Such a reason does not deserve much attention. In Williams v. Marion Rapid Transit, Inc., supra, 10 A.L.R.(2d) l.c. 1057, the court answered such a contention as follows: "In many cases the fact must be recognized that there is difficulty of proof for both sides. However, it is elementary that if a wrong has been committed there should be a remedy." If a plaintiff cannot prove his case, no judgment will be permitted to stand. Certainly, courts are not going to refuse to entertain suits for the redress of wrongs because a plaintiff would have difficulty in proving his case. Nor should a court refuse to entertain such suits for the reason that to afford a remedy may at times give rise to fraudulent claims. Neither one is a sufficient reason for denying a cause of action. Verkennes v. Corniea, supra, 10 A.L.R.(2d) l.c. 638. Did not the common law courts in applying principles of justice establish the "humanitarian doctrine"?

Still a further reason advanced for denying a child after birth the right to maintain a tort action for injuries sustained while in the mother's womb is that before birth it was "a part of the mother, and is only severed from her at birth." Allaire v. St. Luke's Hospital, supra, 56 N.E. l.c. 640. It is there stated that the mother and not the child may recover for the injuries sustained. The dissenting opinion in that case fully answers the question and we think demonstrates the gross injustice resulting to the plaintiff in that case by the majority opinion.

In the case of Prescott v. Robinson, 74 N.H. 460, 69 A. 522, a suit for damages was brought by a mother on the theory that her unborn child was a part of her body. She sought to recover damages for personal injuries and also for injuries to her unborn child, later born alive but deformed as a result of the injuries sustained. The court, in answer to her plea, had the following to say (69 A. l.c. 524): "The mother's right to the damages she suffers for the defendant's wrongful act in causing her to bring forth a misshapen and sickly child, instead of a well developed and healthy one, does not depend on the question whether at the time of the injury the foetus is deemed in law a person, or whether after birth it may maintain an action to recover for the wrong done to it before its birth. She cannot recover in her own right for the child's injuries for which, if it were deemed a person in law, it would have a right of action; and, if it is deemed not to be a person at the time of injury, but pars viscerum matris (Earl of Bedford's Case, 7 Co. 7b), she suffers no damage for its deformity merely, that is, the fact alone that it is deformed is a misfortune to the child, for which she is not

entitled to damages, unless it causes her special physical pain and suffering. Such damages pertain to the child alone. The mother is no more entitled to them than the father is. Upon the birth of the child the physical consequences of the injury to it become effective. From the time of the injury to the time of the birth the mother suffers no physical damage merely because the child's limbs are distorted, or because its health is impaired. It, therefore, follows that the child alone suffers damage on that account; and, if that damage is held to be damnum absque injuria, the mother's right thereto would not be increased." We think the case was correctly decided. However, the result reached is a strong argument in favor of a right on the part of the child to maintain an action for the damages it sustained.

In the opinion in the Buel case, supra, 154 S.W. l.c. 72 (2), this court, after reviewing a number of cases on the subject, stated, "In all the cases the right of a mother to maintain an action for [581] negligent injury to herself and her unborn child is conceded." An examination of the cases reviewed discloses that the question of the right of the mother to recover for the injury suffered by the child was not involved. The rule is that the mother cannot recover for the injuries to the child but is limited to a recovery for her own injuries. Prescott v. Robinson, supra. Among the cases referred to in the Buel case, we find Dietrich v. Northampton, and Allaire v. St. Luke's Hospital, supra. The obiter in the Buel case and the cases therein referred to that a mother may recover for the injuries to the child is incorrect. Such statements seem to have been made for the purpose of obscuring the evident result in those decisions of a wrong without a remedy when a child is denied a right to compensation for a prenatal injury.

A court of justice can hardly say to a mother that she cannot recover damages for injuries to the child because "the child alone suffers damage on that account;" and then deny a cause of action by the child seeking damages by saying, "as the unborn child was a part of the mother at the time of the injury, any damage to it which was not too remote to be recovered for at all was recoverable by her, * *." Dietrich v. Northampton, supra, 138 Mass. l.c. 17. The Supreme Court of Canada in the case of Montreal Tramways v. Leveille, 4 D.L.R. (1933) 337, l.c. 345, had the following to say: "If a child after birth has no right of action for pre-natal injuries, we have a wrong inflicted for which there is no remedy, for, although the father may be entitled to compensation for the loss he has incurred and the mother for what she has suffered, yet there is a residuum of injury for which compensation cannot be had save at the suit of the child. If a right of action be denied to the child it will be compelled, without any fault on its part, to go through life carrying the seal of another's fault and bearing a very heavy burden of infirmity

and inconvenience without any compensation therefor. To my mind it is but natural justice that a child, if born alive and viable, should be allowed to maintain an action in the Courts for injuries wrongfully committed upon its person while in the womb of its mother.'' The above case was quoted with approval in Bonbrest v. Kotz, supra, 65 F. Supp. l.c. 141.

The Supreme Court of Maryland, in Damasiewicz v. Gorsuch, supra, after an exhaustive review of the question, held that a child could maintain an action for damages for prenatal injuries. The same ruling was made in Woods v. Lancet, supra, 102 N.E.(2d) l.c. 694, wherein the court quoted with approval the following: '' 'When these ghosts of the past stand in the path of justice clanking their mediæval chains the proper course for the judge is to pass through them undeterred.' ''

Applying the axiom, ubi jus, ibi remedium, and the principles of the common law, we hold that a viable child, injured while en ventre sa mere, born alive, may after its birth maintain a tort action against the tort-feasor for the injury inflicted.

What we have said disposes of the principal question in this case. If a viable child en ventre sa mere may maintain a suit after birth for a prenatal injury sustained through another's negligence, then it follows that the tort-feasor would be liable if the injury caused the death of such child after birth. Our reason for so stating is that the statute, supra, itself so says. The statute plainly provides that a tort-feasor who would be liable to a person for injuries inflicted shall ''in every such case'' be liable in damages, if death results from such injuries. We cannot read into the statute any exception. The statute says *''in every such case''* and the plain terms of the statute authorize plaintiffs in this case to maintain their action for damages. (Emphasis ours)

The Supreme Court of Ohio in Jasinsky v. Potts, supra, had before it a similar situation. A reading of the opinion will disclose that the plaintiff sought damages for the death of a child under the provisions of a statute similar to our statute; that the prenatal injury to the child was sustained in a collision of two cars; that the child was prematurely born on August 26, [582] 1945, and died on November 20, 1945. The same contentions were made by the defendants in that case as are made in this case, that is, that at the time the statute was passed, the right of an injured viable child en ventre sa mere to maintain a tort action after birth was not recognized, therefore, the legislature did not intend to include a viable child as a person. The court stated the contentions made in the Ohio case as follows (92 N.E.(2d) l.c. 811):

''In other words, it is strongly urged that 'since a cause of action in favor of a child for injuries received by it prior to birth did not exist at any of the times the Ohio Legislature enacted or re-enacted

the wrongful-death statute, there could not have been, in the mind of any of the legislators, any intention to create a cause of action upon the death of such a child.' Citing Buel v. United Railways Co., 248 Mo. 126, 154 S.W. 71, 45 L.R.A., N.S., 625, Ann. Cas. 1914C, 613.

"In this connection, it is urged that it is a principle of statutory construction that statutes are to be construed in the light of attendant conditions and the state of the law existent at the time of their enactment."

A contention that the Ohio statute was in derogation of the common law affords another similarity in that here defendant strongly urges in his brief that "We are *construing a statute that is in derogation of the common law.*" and that as such it should be strictly construed. The Ohio court answered the above-stated contentions as follows (92 N.E. (2d) l.c. 811): "Considering these defensive claims, it must be observed that if we adhere to the interpretation of the word, 'person,' used in the statute, as including an unborn 'viable child,' as held by this court in the Williams case, the language of the wrongful-death statute hereinbefore quoted is clear, unambiguous and does not require interpretation. The statute needs only to be applied to the facts within the scope of its operation." See also Verkennes v. Corniea, supra; 50 Am. Jur. 204, Sec. 225; 59 C.J. 943, Sec. 563. We may add that while the Missouri statute did change a rule of the common law, it does not follow that the statute should be strictly construed. Statutes changing common law rules may also be remedial. See 59 C.J. 1106, Sec. 657. However, whether remedial or in derogation of the common law, we have no right to change the meaning of a plain and unambiguous statute. Cummins v. Kansas City Public Service Co., 334 Mo. 672, 66 S.W. (2d) 920, 931 (19, 20); Section 1.010, RSMo 1949, VAMS.

In State ex inf. Rice ex rel. Allman v. Hawk, 360 Mo. 490, 228 S.W. (2d) 785, l.c. 789 (8, 9), this court stated the rule thus: "The language of the statute is clear and unambiguous, and we have no right to read into it an intent which is contrary to the legislative intent made evident by the phraseology employed."

This court in the Buel case, supra, followed, without giving much consideration to the merits, the case of Dietrich v. Northampton, supra. The reasoning of the Dietrich case has been followed in a number of states but not without vigorous dissent. It has been expressly criticized and not followed in a number of well-considered cases. As will be noted in the Annotations in the A.L.R. references, supra, and in the law journals of leading law schools, the correctness of the ruling in the Dietrich case has been generally questioned.

After fully considering the question, we have determined that the plaintiff's petition in this case states a cause of action and that

the opinion in Buel v. United Rys. Co., supra, in so far as it conflicts with this opinion is hereby overruled.

For the reasons given, the judgment of the trial court is hereby reversed and the cause remanded for trial. It is so ordered.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the Court en Banc. *Ellison, Hyde, Hollingsworth, Leedy* and *Tipton, JJ.,* and *Conkling, C.J.,* concur; *Dalton, J.,* not sitting.