Jason CONNOR, Appellant,

v.

MONKEM COMPANY, INC.,
et al., Respondents.

No. 77313.

Supreme Court of Missouri,
En Banc.

April 25, 1995.

As Modified on Denial of Rehearing
May 30, 1995.

Maurice B. Graham, Mike D. Murphy, Fredericktown, for appellant.

William A. Brasher, Timothy D. Richardson, Patricia D. Brasher, St. Louis, Jeffrey S. Maguire, Cape Girardeau, for respondents.

PRICE, Judge.

Jason Connor seeks to bring a wrongful death claim as a father pursuant to section 537.080, RSMo 1994[1], for the death of an unborn child[2] prior to viability. The trial court dismissed the suit for failing to state a claim. We reverse and remand.

---

1. All statutes are RSMo 1994 unless indicated otherwise.

2. The term "unborn child" is taken from Section 1.205.

## I.

Connor was the unmarried father of an unborn child with whom Vicki Richards was approximately four months pregnant on August 12, 1990.[3] On that date, Vicki Richards was a passenger in an automobile driven by Kathy Lindsey. At or near the junction of U.S. Highway 67 and Highway E in Madison County, Missouri, the Lindsey vehicle was struck by a tractor trailer driven by Warren Richter, an employee of Monkem Company, Inc. Richards and the unborn child were killed.

Connor brought suit in Madison County against Lindsey, Richter, and Monkem Company for the wrongful death of the unborn child. The suit was dismissed for failure to state a claim. Connor appealed to the Court of Appeals, Eastern District. The eastern district determined that a claim existed and the dismissal should be reversed. Because this result was not consistent with *May v. Greater Kansas City Dental Society*, 863 S.W.2d 941 (Mo.App.W.D.1993), the case was transferred here. We have jurisdiction pursuant to the Missouri Constitution, art. V, § 10.

## II.

As stated in *Sullivan v. Carlisle*, 851 S.W.2d 510, 512 (Mo. banc 1993):

Wrongful death is a statutory cause of action. *Powell v. American Motors Corp.*, 834 S.W.2d 184, 186 (Mo. banc 1992); *Hagen v. Celotex Corp.*, 816 S.W.2d 667, 674 (Mo. banc 1991). Well-settled principles of statutory interpretation require us to ascertain the legislative intent from the language of the act, considering the words used in their plain and ordinary meaning, and to give effect to that intent whenever possible. *State v. Knapp*, 843 S.W.2d 345, 347 (Mo. banc 1992). If the statute is ambiguous, we attempt to construe it in a manner consistent with the legislative intent, giving meaning to the words used within the broad context of the legislature's purpose in enacting the law. *State*

ex rel. *Missouri Hwy. & Transp. Com'n v. Alexian Brothers of St. Louis, Inc.*, 848 S.W.2d 472, 474 (Mo. banc 1993).

The precise question before us is whether a nonviable unborn child is a "person" capable of supporting a claim for wrongful death pursuant to § 537.080. The legislature has never expressly defined this term within the wrongful death statute to include or exclude unborn children. The Court, accordingly, has struggled with the question of when an unborn child becomes a "person" capable of supporting a wrongful death claim for many years.

*Buel v. United Railway Company*, 248 Mo. 126, 154 S.W. 71 (1913), appears to be the first case in which the Missouri Supreme Court considered whether a prenatal injury would support a wrongful death claim. Although the child was liveborn, the Court denied recovery on the basis that the unborn child was not a separate legal entity from its mother when injured. The Court also stated that "[w]e have not been able to find any precedent at common law establishing the right of a child injured while en ventre sa mere, but subsequently born alive, to bring an action thereafter for injuries so received." *Id.* 154 S.W. at 72.

Forty years later in *Steggall v. Morris*, 363 Mo. 1224, 258 S.W.2d 577 (1953), the Court overruled *Buel*, stating: "We rule that the theory of no precedent is not a valid reason for denying a remedy to an injured person." *Id.* 258 S.W.2d at 580. *Steggall* held that a liveborn child who thereafter died from prenatal injuries was a "person" capable of supporting a wrongful death cause of action. It is interesting to note that the Court in *Steggall* stated:

After reading the above authorities on the subject of infant en ventre sa mere, we have come to the conclusion that it is not in accordance with the truth to say the law indulges in a fiction when it attributes a legal personality to an unborn child. The above statement is not new. A number of courts and text writers have reached the

---

**3.** Section 537.080(1) provides that a wrongful death claim may be stated by "the father or mother of the deceased, natural or adoptive". No requirement exists that the parents be married to bring such a claim, although an unmarried father must prove paternity. *See Luff v. Hawkins*, 551 A.2d 437, 439 (Del.Super.Ct.1988).

same conclusion. We call particular attention to the opinion by Justice McGuire in the case of *Bonbrest v. Kotz,* supra, 65 F.Supp. *loc. cit.* 140(3). The justice there cited many medical authorities to support the statement, "From the viewpoint of the civil law and the law of property, a child en ventre sa mere is not only regarded as human being, but as such from the moment of conception—which it is in fact." *Id.* at 579.

Nearly twenty years ago, in *State ex rel. Hardin v. Sanders,* 538 S.W.2d 336 (Mo. banc 1976), it was held that a stillborn child was not a "person" capable of supporting a wrongful death claim.[4] In *Hardin,* the Court stated:

> We think the legislature in enacting the original act and subsequent revisions did not intend to create an action for the death of a fetus never born alive. In view of the common law rule that an unborn fetus was not a "person" we think if there had been an intention to create such an action it would have been specifically so stated.

*Id.* at 338–39. In *Hardin,* the plaintiff had argued that it was arbitrary and unjust to draw a distinction between a stillborn child and a liveborn child who died shortly thereafter, where both deaths resulted from prenatal injuries. Instead, the plaintiff argued that viability should be the differentiating point in time. The Court rejected that argument because it was no less arbitrary or unjust to draw the line at viability and, because the point of viability would be difficult to determine, it would be unworkable.

*O'Grady v. Brown,* 654 S.W.2d 904 (Mo. banc 1983), however, reversed *Hardin* and allowed a cause of action under the statute for the death of a viable unborn child. Noting that the wrongful death statute had just been amended to expand recovery from pecuniary damages to also include "consortium, companionship, comfort, instruction, guidance, counsel, training and support", *Id.* at 907, the Court reasoned that permitting a cause of action for the death of a viable unborn child would "be consistent with the broad purpose for which the statute was passed." *Id.* at 909.[5]

In *Rambo v. Lawson,* 799 S.W.2d 62 (Mo. banc 1990), the Court declined to extend a cause of action for wrongful death to a nonviable unborn child, stating:

> We do not believe that it is necessary to extend the definition of "person" beyond the *O'Grady* standard in order to serve the purposes of the wrongful death statute, or to compensate the plaintiffs adequately for their loss.

799 S.W.2d at 63. For the first time, the Court was called upon to address the effect of § 1.205, enacted in 1986 as a part of Senate Committee Substitute for House Bill 1596, 1986 Mo.Laws 689, (S.C.S.H.B. 1596), upon the wrongful death statute.[6] Writing

---

4. In 1965, the Court decided *Acton v. Shields,* 386 S.W.2d 363 (Mo.1965). In *Acton,* the question of whether an unborn child was a "person" was not addressed. Instead the Court held that collateral beneficiaries could not establish the necessary pecuniary damages to sustain a wrongful death claim.

5. For a more extensive outline of this issue, see, Meadows, *Wrongful Death and the Lost Society of the Unborn,* 13 Journal of Legal Medicine 99 (1992); Kader, *The Law of Tortious Prenatal Death Since Roe v. Wade,* 45 Mo.L.Rev. 639 (1980).

6. Section 1.205 reads:

1. The general assembly of this state finds that:
(1) The life of each human being begins at conception;
(2) Unborn children have protectable interests in life, health, and well-being;

(3) The natural parents of unborn children have protectable interests in the life, health, and well-being of their unborn child.
2. Effective January 1, 1988, the laws of this state shall be interpreted and construed to acknowledge on behalf of the unborn child at every stage of development, all the rights, privileges, and immunities available to other persons, citizens, and residents of this state, subject only to the Constitution of the United States, and decisional interpretations thereof by the United States Supreme Court and specific provisions to the contrary in the statutes and constitution of this state.
3. As used in this section, the term "unborn children" or "unborn child" shall include all unborn child or children or the offspring of human beings from the moment of conception until birth at every stage of biological development.
4. Nothing in this section shall be interpreted as creating a cause of action against a woman for indirectly harming her unborn child by

for a plurality, Judge Blackmar indicated that the statute was a part of a bill explicitly designed to regulate abortion and was not intended to expand causes of action for wrongful death. Then he observed that subsection 2 of § 1.205 was not effective at the time of the plaintiff's injury and was therefore not applicable.

Judge Blackmar's plurality decision was attacked from both sides. Judge Robertson, with Judge Covington concurring, agreed with the result of Judge Blackmar's opinion, but advocated overruling *O'Grady*. The primary thrust of Judge Robertson's opinion was that by otherwise amending the wrongful death statute subsequent to *Hardin*, the legislature must be presumed to have agreed with *Hardin*. He and Judge Covington would have allowed no wrongful death cause of action for a stillborn child, viable or not.

Judge Holstein, contrastingly, dissented, with Judge Rendlen concurring. He argued that under the plain language of the statute, the current state of the law, and clear scientific evidence, a fetus should be considered as a person under the wrongful death statute regardless of its stage of development. He stated:

> Rules of statutory construction should never be applied so as to defeat the purpose of the statute. The viability standard is not in the plain language of the statute; it is not consistent with the common law; it is incongruous with reason.

799 S.W.2d at 71. Neither Judge Robertson nor Judge Holstein discussed § 1.205 in their opinions.

### III.

All of this is preliminary to the core issue before us. That is, in enacting § 1.205.2 did the legislature express an intention that a nonviable unborn child be deemed a "person"

for purposes of a § 537.080 wrongful death claim?

 Clearly § 1.205.2 did not expressly amend § 537.080. To do so in its present form would be violative of art. III, § 28 of our constitution.[7] However, § 1.205.2 does set out a canon of interpretation enacted by the general assembly directing that the time of conception and not viability is the determinative point at which the legally protectable rights, privileges, and immunities of an unborn child should be deemed to arise. Section 1.205(2) further sets out the intention of the general assembly that Missouri courts should read all Missouri statutes in *pari materia* with this section. Given the inconsistency of our past holdings, it is not unreasonable for the legislature to enact such a canon of construction. Article III, § 28 of our constitution does not prohibit the general assembly from adopting rules of construction. *See Boyd–Richardson Co. v. Leachman*, 615 S.W.2d 46, 53 (Mo. banc 1981). In this regard, § 1.205 is similar to other statutes enacted by the legislature directing a particular rule of construction, like § 287.800, which mandates that our workers' compensation statutes be liberally construed.

 While § 1.205(2) does not mandate any particular result, as would an express amendment of § 537.080, we cannot avoid the conclusion that the legislature intended the courts to interpret "person" within the wrongful death statute to allow a natural parent to state a claim for the wrongful death of his or her unborn child, even prior to viability.[8] *See State v. Knapp*, 843 S.W.2d 345 (Mo. banc 1992). Especially persuasive to this conclusion is the language of § 1.205.1(3), which provides that "the natural parents of unborn children have protectable interests in the life, health and well-being of their unborn child." *Rambo* was decided

---

failing to properly care for herself or by failing to follow any particular program of prenatal care.

7. *See, State v. Knapp*, 843 S.W.2d 345 (Mo. banc 1992); *State ex rel. McNary v. Stussie*, 518 S.W.2d 630 (Mo. banc 1974); *Boyd–Richardson Co. v. Leachman*, 615 S.W.2d 46 (Mo. banc 1981). Defendant also alleged that S.C.S.H.B. 1596 violates art. III, § 23 of the Missouri Con-

stitution. This argument was rejected in *Knapp* at 348.

8. Section 1.205(2) expressly acknowledges that it, as S.C.S.H.B. 1596, is subject to the Constitution of the United States and decisional interpretations thereof by the United States Supreme Court. No party here has raised any such issue in regard to their own, or a derivative, constitutional right.

regarding an incident that arose prior to the effective date of § 1.205.2. *Rambo* is not to be followed for incidents arising subsequent to the effective date of that section.

### IV.

We recognize that the majority of other jurisdictions in America limit recovery to viable unborn children. Most of the decisions from these jurisdictions construe general statutes with little or no guidance as to whether unborn children, viable or not, should be considered as persons for a wrongful death claim. Prior to the effective date of § 1.205.2, Missouri was numbered among them.

Little hesitancy has been shown, however, to give effect to more specific and inclusive direction by legislative bodies, either by specific amendment to a wrongful death statute; *see Seef v. Sutkus*, 145 Ill.2d 336, 164 Ill.Dec. 594, 583 N.E.2d 510 (1991); *Farley v. Mount Marty Hosp. Ass'n*, 387 N.W.2d 42 (S.D. 1986), or by a separate statute to be read in *pari materia* with a wrongful death statute, *see Porter v. Lassiter*, 91 Ga.App. 712, 87 S.E.2d 100 (1955); *Danos v. St. Pierre*, 402 So.2d 633 (La.1981).

■ As the question before us is one of statutory construction, we must be more sensitive to legislative direction and less sensitive to our own evaluation of policy considerations. Thus, the legislature's relatively clear expression in § 1.205 that parents and children have legally protectable interests in the life of a child from conception onward must be accorded greater weight than the many other and obvious difficulties associated with the type of claim here asserted.

### V.

Plaintiff's victory to this point, however, may be largely pyrrhic. While we hold that a wrongful death claim may be stated for a nonviable unborn child, plaintiff's ability to prove damages is certainly subject to question. Missouri has recognized that "[s]peculative results are not a proper element of damages." *Wise v. Sands*, 739 S.W.2d 731, 734 (Mo.App.1987). In *Girdley v. Coats*, 825 S.W.2d 295, 298 (Mo. banc 1992), we dis-

cussed the difficulty of establishing damages in a wrongful conception case. There, it was noted:

Who can divine, soon after birth, whether the child will be a financial boon or burden to the parents, what level of education will be required or what unique expenses could arise? These determinations are beyond the scope of probative proof.

Although these difficulties also exist for very young children and for viable but unborn children, they are all the more glaring in a case involving a child that has not even reached the point of viability within the womb. *See DiDonato v. Wortman*, 320 N.C. 423, 358 S.E.2d 489 (1987). It would be premature to attempt to rule these issues now without a fully developed record. Suffice it to say that upon remand the parties should keep in mind the differences between stating a claim and proving it.

### VI.

The trial court's order of dismissal is reversed and the case is remanded for further proceedings in accordance with this opinion.

HOLSTEIN and BENTON, JJ., concur.

ROBERTSON, J., concurs and concurs in result in separate opinion filed.

COVINGTON, C.J., dissents in separate opinion filed.

THOMAS, J., and TURNAGE, Special Judge, concur in opinion of COVINGTON, C.J.

LIMBAUGH, J., not sitting.

ROBERTSON, Judge, concurring and concurring in result.

I concur in all but Part V of the majority opinion. I do not join Part V because, in my opinion, it is obiter dictum that does not reflect the Court's experience.

The principal opinion asserts that the difficulties that attend proof of damages in wrongful death actions for viable unborn children "are all the more glaring in a case involving a child that has not even reached the point of viability in the womb." (Majority op. at 93.) I disagree. I can see no greater difficulty in proving damages for an

unborn, nonviable child than for an unborn, viable child. To the extent those "difficulties" exist, they are the product of this Court's decision in *O'Grady v. Brown,* 654 S.W.2d 904 (Mo. banc 1983), not of the Court's decision today. In the dozen years since *O'Grady,* the trial bench and trial bar have apparently managed to establish a process for working through those difficulties. If they have not established such a process, they have maintained a remarkable silence in the face of their frustration.

COVINGTON, Chief Justice, dissenting.

I must respectfully dissent.

The issue before this Court, as recognized by the majority opinion, was addressed in *Rambo v. Lawson,* 799 S.W.2d 62 (Mo. banc 1990): whether a non-viable fetus is a person within the meaning of § 537.080, RSMo 1986. For the reasons stated in Judge Robertson's separate opinion in *Rambo,* in which I joined, I disagree with the holding of the majority opinion that a non-viable fetus is a person for the purposes of § 537.080. Nothing has occurred in the short time since this Court decided *Rambo* to require a different result.

The only factor that serves to distinguish the present case from *Rambo* is that § 1.205, RSMo 1986, was in force at the time of the incident giving rise to the present controversy. Section 1.205 has no effect on the outcome of this case. By its terms, § 1.205.2 extends to "unborn children . . . all the rights, privileges, and immunities available to other persons, citizens, and residents of this state. . . ." Section 537.080 does not affect the rights of the unborn; it creates a cause of action for the survivors of a deceased person. The beneficiaries of a wrongful death action do not derive their rights from those of the deceased, but from the statute. At common law, the deceased had no right of action for wrongful death. Section 537.080 creates a new right in the beneficiaries, in denigration of the common law, to seek compensation for the death of another. The

rights of the deceased are unaffected. The trial court's holding that a non-viable fetus is not a person for the purposes of § 537.080 does not deny the fetus any rights. Section 1.205.2, therefore, is not implicated.[1]

The conclusion reached by the majority opinion does not follow from the premise that precedes it. The majority opinion states that "the time of conception and not viability is the determinative point at which the legally protectable rights, privileges, and immunities of an unborn child should be deemed to arise." From this premise, the majority opinion concludes that the wrongful death statute must be construed "to allow a natural parent to state a claim for the wrongful death of his or her unborn child, even prior to viability." Thus, under the logic of the majority opinion, a statute concerning the rights of "unborn children" was intended to create a cause of action in favor of the parents. The conclusion does not follow. Section 1.205.2 does not address the rights of parents.

The majority opinion purports to find support for its holding in § 1.205.1(3), in which the legislature stated a finding that "parents of unborn children have protectable interests in the life, health, and well-being of their unborn child." In contrast to § 1.205.2, in which the legislature directed the manner in which "the laws of this state shall be interpreted and construed," § 1.205.1(3) does not require that statutes be interpreted in light of the finding that parents have protectable interests. The majority opinion transforms the legislature's general finding into a judicial enactment creating a new cause of action available to parents for the wrongful death of a non-viable fetus.

Contrary to an assertion in *State v. Knapp,* 843 S.W.2d 345, 347 (Mo. banc 1992), in my view unnecessary to the resolution of the issues in that case, § 1.205 does not purport to define the term "persons." Although I concurred in *Knapp,* I would overrule it to

---

1. The present case is not one in which the rights, privileges, or immunities of a fetus are at issue. Assuming, arguendo, that § 1.205 is applicable in the context of the wrongful death statute, *but see Rambo,* 799 S.W.2d at 64, § 1.205 might be

read to require that a non-viable fetus be allowed to maintain a wrongful death action as a plaintiff, although such a hypothetical strains credulity.

the extent that it could be read to indicate otherwise.

Section 1.205 has no effect on the present case. I would affirm the judgment of the trial court.