Kelli RICHIE, a minor, By and Through her Next Friend, Corrine LAUSUSE, Plaintiff–Appellant/Respondent,

v.

Michael LAUSUSE and Denise Brown, Defendants/Respondents,

and

Valiere Laususe, Individually and Next Friend for Ashley Laususe, Movant–Intervenor/Cross–Appellant.

Nos. 70879, 70952 and 70964.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 10, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 29, 1997.

Application to Transfer Denied
Sept. 30, 1997.

---

Michael D. Stokes, Devereaux, Stokes & Nolan, P.C., St. Louis, for plaintiff–appellant.

Mark Bremer, Kohn, Shands, Elbert, Gianoulakis & Giljum, James Heckel, St. Louis, Ronald Borgman, Clayton, for defendants/respondents.

GERALD M. SMITH, Judge.

This is an appeal by Kelli Richie (Kelli) from the trial court's dismissal of her paternity petition for lack of personal jurisdiction. Because Kelli failed to join the proper party, the trial court did not have personal jurisdiction over the putative father. Where the trial court is without jurisdiction, this court lacks jurisdiction and the appeal must be dismissed.[1]

In March 1988, Michael Laususe (Michael) died in an automobile accident. Michael's widow, Valiere Laususe, and their daughter, Ashley, filed a wrongful death action against Normandy Osteopathic Hospital (Hospital). In June 1993, Valiere and Ashley reached an agreement to settle the wrongful death action with the hospital. They then sought court approval of the wrongful death action. Prior to the court's ruling on the settlement, Kelli Richie (Kelli) filed an entry of appearance in the wrongful death action claiming to be Michael's minor illegitimate daughter.

About the same time she filed the entry of appearance, Kelli filed a paternity action styled *Richie by and through Richie v. Laususe* seeking to establish a parent-child relationship between herself and Michael under the Uniform Parentage Act (UPA). Kelli named Michael as the sole defendant in that paternity action. The trial court dismissed Kelli's paternity action for lack of jurisdiction. In *Richie By and Through Richie v. Laususe*, 892 S.W.2d 746 (Mo.App.1994)(*Richie I*), this court dismissed Kelli's appeal, holding a trial court lacks personal jurisdiction over a party that is deceased. Because Michael was the only named defendant, this court recognized the trial court was without personal jurisdiction over him. *Richie I*, 892 S.W.2d at 748.

Following the trial court's decision in *Richie I*, Valiere and Ashley filed a petition for approval of the wrongful death settlement. The trial court approved the settlement and granted their motion for summary judgment against Kelli. Kelli appealed that grant of summary judgment in *Laususe v. Normandy Osteopathic Hospital*, 918 S.W.2d 953 (Mo.App.1996).

After filing her appeal in *Laususe*, Kelli filed a second paternity action, which is the case now before this court (*Richie II*). This time Kelli named her natural mother, Denise Brown (Brown), and Michael as defendants. Kelli then sought to substitute a party for Michael in accord with Rule 52.13(a)(1). Relying on § 210.826.3 RSMo of the UPA which permits the child of an alleged father to bring an action to establish the father-child relationship, Kelli sought to substitute Michael's father for Michael. Valiere and Ashley filed a motion seeking to intervene in the paternity action.

While the Rule 52.13(a)(1) motion was still pending, this court reversed the trial court's grant of summary judgment in favor of Valiere and Ashley in *Laususe*. This court rec-

---

1. The facts reviewed mirror those set forth in *Laususe v. Normandy Osteopathic Hosp.*, 918 S.W.2d 953 (Mo.App.1996). For the sake of simplicity, the appeal in the instant case will be referred to as *Richie II*.

ognized, "[A] proposed wrongful death settlement should be held in abeyance until any issue as to the paternity of an alleged illegitimate child wrongful death claimant is determined in accordance with the UPA." *Laususe*, 918 S.W.2d at 956. We then explained "the [wrongful death] settlement should be held in abeyance until the pending paternity proceeding is resolved." *Id.*

Immediately following the *Laususe* decision, the *Richie II* trial court denied Kelli's Rule 52.13 motion to substitute a party and denied Valiere and Ashley's motion to intervene. Thereafter, the trial court denied Kelli's petition to determine a father-child relationship, finding it was without jurisdiction to enter an order of paternity. Kelli appeals the trial court's dismissal of her paternity petition and its denial of her motion to substitute a party. Valiere and Ashley filed a motion with this court to intervene and to be granted status as respondents in Kelli's appeal. This court granted that motion. The respondents argue the trial court erred in denying their motion to intervene and in not awarding attorney's fees.[2]

■ In the instant case the trial court dismissed Kelli's petition for lack of jurisdiction. Because a circuit court has subject matter jurisdiction to determine an issue of paternity, *Poole Truck Lines, Inc. v. Coates,* 833 S.W.2d 876 (Mo.App.1992)[1], the trial court must have dismissed Kelli's petition for lack of personal jurisdiction.

■ Although neither side has raised the issue of whether this appeal is properly before this court, it is our duty to first examine whether we have jurisdiction, even if we must do so *sua sponte*. *Quelle Quiche v. Roland Glass Foods*, 926 S.W.2d 211 (Mo. App.1996)[1,2]. Because the trial court did not state Kelli's petition was dismissed with prejudice, such dismissal is deemed to have been without prejudice. *Id.*; Rule 67.03. Where a petition has been dismissed for lack of personal jurisdiction without prejudice, this court has recognized such an action is

not appealable because it is not a final judgment. *Dillaplain v. Lite Industries, Inc.,* 788 S.W.2d 530 (Mo.App.1990)[4]; *Abbate v. Tortolano,* 782 S.W.2d 810 (Mo.App.1990)[9]; *State ex rel. Degeere v. Appelquist,* 748 S.W.2d 855 (Mo.App.1988)[3]; *Schwenker v. St. Louis County Nat. Bank,* 682 S.W.2d 868 (Mo.App.1984)[3,4]. A dismissal for lack of personal jurisdiction is properly challenged by extraordinary writ. *Schwenker, supra* at [3,4]; *Dillaplain, supra* at [4]; *Abbate, supra* at [9].

■ Kelli did not seek an extraordinary writ in the instant case but instead sought a review on appeal. The courts have recognized that where the ruling of the trial court decides the ultimate question of jurisdiction so that refiling the petition would be futile, appeal properly lies. *Quelle Quiche, supra* at [3]; *Dillaplain, supra* at [4]. We believe this is such an instance as will be demonstrated *infra*.

### Kelli's Appeal

■ Kelli argues the trial court improperly denied her motion to substitute Michael's father for Michael under Rule 52.13(a)(1). Because § 210.826.3 RSMo permits a parent of an alleged father to bring an action to determine a father-child relationship, Kelli reasons the parent of an alleged father should be a party *against whom* an action for paternity could be brought. Kelli cites no legal authority for her proposition.

The respondents contend this court has held the putative father's personal representative is the only proper party against whom a paternity action may be brought where the alleged father has died. In support of this argument, respondents cite *Travis v. Contico International, Inc.,* 928 S.W.2d 367 (Mo.App. 1996), *Roberts v. Roberts,* 920 S.W.2d 144 (Mo.App.1996) and *Reed v. Liszewski,* 873 S.W.2d 942 (Mo.App.1994).

2. Kelli's appeal from the trial court's denial of her motion to substitute a party (Appeal No. 70952), along with the respondents' appeal from the trial court's denial of their motion to intervene (Appeal No. 70964), have been consolidated with Kelli's appeal from the trial court's dismissal of her paternity petition for lack of personal jurisdiction (Appeal No. 70879). This opinion addresses all three appeals.

■ The UPA constitutes the exclusive procedure for determining parentage.[3] *Poole Truck Lines, Inc., supra* at [1]; *Snead by Snead v. Cordes by Golding,* 811 S.W.2d 391 (Mo.App.1991)[10,11]. Kelli has no presumed father under the statute. § 210.822 RSMo 1994. The UPA dictates the child, the natural mother, each presumed father and each man alleged to be the natural father must be parties to the paternity action. § 210.830 RSMo. In the instant case, those parties were joined. But because Michael had died, it was necessary to either substitute a party for him under Rule 52.13(a)(1) or join a proper party. If a proper party is not substituted or joined, the action against the deceased party should be dismissed for lack of personal jurisdiction. *See Richie I* at [2].

The UPA is silent as to who is the proper party in the event the putative father dies. In *Reed v. Liszewski,* 873 S.W.2d 942 (Mo. App.1994), this court first inferred from the UPA that the personal representative of the alleged father's estate was the proper party when the putative father has died. Citing § 210.829.4 RSMo which pertains to the proper jurisdiction and venue in which a paternity action may be brought, the *Reed* court reasoned that because the UPA permits paternity proceedings in the county "in which proceedings of [the alleged father's] estate [has] been or could have been commenced," the personal representative is the proper party in place of the deceased father. *Reed* at [l.c.943].

Subsequent decisions of this court have adopted *Reed's* analysis. In *Roberts v. Roberts,* 920 S.W.2d 144 (Mo.App.1996)[5], this court reiterated *Reed's* reasoning and remanded that case to the trial court when plaintiff failed to name the alleged father or his estate in her paternity petition. In *Travis v. Contico International, Inc.,* 928 S.W.2d 367 (Mo.App.1996) this court held unequivocally that "the proper party to represent a deceased putative father against an action for paternity is the personal representative of the decedent's estate." *Id.* at [13,14].

In the instant case *Travis* is controlling. Michael's personal representative is the only proper party in place of Michael. The trial court correctly overruled Kelli's motion to substitute Michael's father for Michael. Furthermore, because the proper party had not been joined, the trial court correctly held it was without jurisdiction to determine paternity since personal jurisdiction had not attached as to the putative father. *Richie I* at [2]; § 210.830 RSMo.

Kelli cites to *Jones v. Jones,* 891 S.W.2d 551 (Mo.App.1995) for the proposition that the natural mother is the only proper party that need be joined in a paternity action. To the extent *Jones* is contrary to § 210.830 RSMo and the *Roberts* and *Reed* decisions, we decline to follow it.

In her brief and at oral arguments Kelli argued that if this court holds the personal representative is the only proper party against whom a paternity action can be brought when the putative father dies, such a declaration would severely limit the time period in which to bring a paternity action. Kelli contends the UPA's statute of limitations for bringing a paternity action would be reduced significantly by the Uniform Probate Code's requirement that an estate be opened within one year of death. § 473.070 RSMo 1994.

Section 210.828.3 of the Parentage Act provides:

3. Sections 210.826 and 210.828 do not extend the time within which a right of inheritance or a right to a succession may be asserted beyond the time provided by law relating to distribution and closing of decedent's estates or to the determination of heirship, or otherwise.

Kelli's opportunities to establish a father-child relationship may be substantially shortened because her putative father is deceased. Many types of time limits are shortened by death and, when a party or a potential party has died, statutes governing substitution of that party and appointment of a personal representative take precedence. *See State v. Reese,* 920 S.W.2d 94 (Mo.banc 1996).

---

3. In a probate proceeding, parentage can also be determined under the Probate Code. *In the Mat-* *ter of Nocita,* 914 S.W.2d 358 (Mo.banc 1996). This is not a probate proceeding.

The dissent relies heavily upon *In the Matter of Nocita, supra.* There the statute of limitations provided by the UPA had run, but the estate of the putative father was open. The court held that because the Probate Code authorized an alternative means to determine paternity for probate purposes, the UPA statute of limitations did not preclude determination of heirship in the probate proceeding. *Nocita* did not hold that the limitation for opening estates in the Probate Code was overridden by the limitation restrictions of the UPA. It was necessary here that the suit for determination of parentage be brought against the personal representative. The time restraints of the Probate Code apply to appointment of that person.

### Respondents' Appeal

In their cross-appeal, respondents premise error on the trial court's failure to award attorney's fees and in denying their motion to intervene. Assuming that a party who was not granted status as an intervenor in the trial court could be awarded attorney's fees, which we doubt, the award of such fees is discretionary under the statute. Section 210.482 RSMo 1994. We find no abuse of discretion. In view of our finding that the trial court lacked jurisdiction over Kelli's petition, the denial of intervention is moot.

Appeal dismissed.

CRANE, P.J., concurs.

PUDLOWSKI, J., dissents in separate dissenting opinion.

PUDLOWSKI, Judge, dissenting.

Although I agree that the personal representative is the proper party to substitute for a deceased putative father as expressed in *Travis v. Contico International, Inc.,* 928 S.W.2d 367 (Mo.App. E.D.1996) and thus the appeal should be dismissed, I must dissent from the principal opinion's direction that the Uniform Probate Code (UPC) reduces the UPA's statute of limitation for a minor child to bring a paternity action. I believe such a decision creates an unnecessary conflict between the two statutes, unjustly deprives the minor child of her right to establish paternity during the time frame permitted under the UPA, and permits the child's right to a father-child relationship to be abrogated by an inattentive mother.

A. *Whether the UPA's explicit recognition of a child's independent right to establish a father-child relationship should be governed by a mother who is unaware of the UPC's statute of limitations.*

The principal opinion concedes the UPA constitutes the exclusive procedure for determining parentage. *Poole Truck Lines, Inc. v. Coates,* 833 S.W.2d 876 (Mo.App.1992); *Snead by Snead v. Cordes by Golding,* 811 S.W.2d 391 (Mo.App.1991). Despite this concession and the fact that the UPA recognizes the child has an right independent of the mother in establishing a father-child relationship, the opinion nonetheless holds the UPA's statute of limitations may be shortened by the action of a mother who is inattentive to the UPC's statute of limitations. Such a result, I believe, is clearly contrary to the letter and the intent of the UPA.

The UPA recognizes the child's rights involved in a paternity action. The UPA declares the child is an indispensable party in a party action and where the child is not joined as a party in a paternity action, such action must be dismissed or has no res judicata effect on the child's own paternity petition. § 210.830.1; *Id; Michigan Dept. of Social Services ex rel. D.H. v. K.S.,* 875 S.W.2d 597 (Mo.App. E.D.1994) (Child not bound by dismissal of mother's petition to establish paternity where child was not named as party). Furthermore, the UPA explicitly provides when a minor child has no presumed father *the child* has the right to bring an action for paternity at any point within three years of reaching the age of majority. § 210.828.1. In interpreting the UPA this court has recognized that the right to establish a father-child relationship belongs as much with the child as it does with the mother or the putative father. *See Piel v. Piel,* 918 S.W.2d 373, 375 (Mo.App. E.D.1996)("[P]urpose of the UPA was to establish a uniform method for determining paternity which would protect the rights of all parties involved, especially the children.").

Clearly, then, it must be said that a right to establish a father-child relationship lies with the child. But contrary to the countless decisions of this court which have recognized that right and that the right exists independent of the mother, by its decision today this court inappropriately permits that right of the child to be shortened by her mother. Such a decision is clearly contrary to the letter of the UPA.

B. *Whether the UPC actually reduces the UPA's time limitation for bringing a paternity action.*

Citing § 473.360 the respondents argue, and the principal opinion agrees, that the UPC shortens the statute of limitations for a paternity action. And although the respondents and the opinion sympathize with Kelli's situation, they nonetheless point out that the UPC shortens the statute of limitations for many types of actions and that an action for paternity is just one more whose time is limited when the defendant dies. But where the time limits are shortened by the death of the defendant, these are instances where claims are made against the decedent. A contract or tort statute of limitations is shortened where the decedent, who would be the defendant, dies. But unlike those instances where the statutes of limitations are shortened by the death of the decedent, a petition for paternity does not constitute a claim against the putative father or the putative father's estate.

1. *What constitutes a "claim" under the UPC.*

The UPC explains:

... all claims against the estate of a deceased person ... founded on contract or otherwise, which are not filed in the probate division, or are not paid by the personal representative, within six months after the first published notice of letters testamentary or of administration, are forever barred against the estate, the personal representative, the heirs, devisees and legatees of the decedent.

§ 473.360.1 RSMo. At the time of Michael's death the UPC had provided: "All claims barrable under the provisions of [§ 473.360.1], in any event, are barred if administration of the estate is not commenced within three years after the death of the decedent." § 473.360.3 RSMo 1986 [1]. In the instant case, there was never an administration of Michael's estate. Therefore if Kelli's paternity action constituted a claim against Michael's estate, her action would have been barred three years after Michael's death.

But the UPC defines a "claim" as: "liabilities of the decedent which survive whether arising in contract, tort or otherwise, funeral expenses, the expense of a tombstone, and costs and expenses of administration." § 472.010(3) RSMo. As early as 1898 in *Bramell v. Adams*, 146 Mo. 70, 47 S.W. 931 (Mo.1898), the Missouri Supreme Court recognized a "claim" is a proceeding for a money judgment which is paid out of the assets of the estate. *Bramell*, 47 S.W. at 934–5. The *Bramell* court rejected an administrator's claim that the plaintiffs' petition seeking specific property, which the administrator had in his possession, was barred by the two year statute of limitations for bringing claims against an estate. "This is not, however, a proceeding for a money judgment, in the ordinary form, against the estate.... [Plaintiffs] do not ask a judgment to be paid out of the assets of the estate in order of classification.... We do not think the special statute of two years in favor of administrators applies in this case." *Id.*

In *Strumberg v. Mercantile Trust Co.*, 367 S.W.2d 535 (Mo.1963), the Supreme Court reiterated the belief that the term "liability," as contained within the probate code's definition of "claim," is defined as a debt or monetary obligation. In *Strumberg*, the court found a partner's contractual right to purchase his deceased partner's interest in their business did not constitute a "claim" against the decedent's estate. "The word 'liability,' as used in connection with probate matters usually, if not always, refers to a debt or a

---

**1.** § 473.360.3 RSMo 1986, although deleted in 1989, was the controlling law at the time of

Michael's death.

pecuniary obligation. This is not a proceeding for a money judgment against the estate. Plaintiff is not seeking to enforce a personal liability of decedent or to establish a demand which existed against him. And he does not pray for a judgment to be classified and paid out of the assets of the estate." *Strumberg*, 367 S.W.2d at 538.

Most recently in *Higgins v. McElwee*, 680 S.W.2d 335 (Mo.App.1984), this court recognized that "[c]laims against the estate of a deceased person, as that phrase is used in § 473.360, refers to liabilities of the decedent which survive. [Cite omitted]." *Higgins*, 680 S.W.2d at 340.

This line of reasoning—namely, that a "claim" against an estate refers to debt or pecuniary obligations that are directed against a decedent's assets—is further supported by the Committee Notes of Rule 52.13. In discussing when the substitution of a party must take place, the Committee warns about the time limitation when one is making a claim against a deceased party's estate:

> [Beware the] limitations upon recovery **against assets** of administered decedents' estates in Sections 473.360.... Written notice of the motion for substitution must be filed in the probate court in which the estate is being administered within six months after the first published notice of letters....

[emphasis added]. Rule 52.13 Committee Notes. Thus, a "claim" against an estate is a debt or pecuniary obligation that is directed at the decedent's assets. *See Hamilton v. Linn*, 355 Mo. 1178, 200 S.W.2d 69 (1947) (action to quiet title does not constitute a claim against decedent's estate as claimant did not seek monetary recovery against decedent's estate).

> 2. *Whether a paternity action constitutes a debt or pecuniary obligation against the putative father's estate.*

Prior to the passage of the UPA, a child seeking to establish a father-child relationship did so by bringing a declaratory judgment action. *N.R. v. R.J.D.*, 588 S.W.2d 76 (Mo.App.1979); *T.E.C. v. K.B.*, 635 S.W.2d 363 (Mo.App.1982). Although a declaratory judgment action for paternity has since been replaced by a petition filed under the UPA, the effect of the establishment of the child-father relationship remains the same. § 210.817 et seq. A declaratory judgment is, by definition, something about which the court makes a declaration; it does not create any new or substantive rights, but is procedural in nature. *Jackson v. Christian Salveson Holdings*, 914 S.W.2d 878, 882 (Mo.App. E.D.1996). The debt or obligation that may arise after the declaratory judgment comes not from the declaratory judgment itself but from other law. For example in a paternity action in which the child seeks child support, the action is actually a two-count petition: one for a declaration of paternity and one for child support based upon a successful resolution of the declaration. Thus, from a declaratory judgment there may eventually arise an obligation or a debt, but that obligation or debt is based upon other law or a previous obligation. Therefore, it cannot be said that the initial declaration of a father-child relationship is a debt or a pecuniary obligation against the father.

I would hold, therefore, that a petition for paternity does not constitute a claim against a deceased putative father's estate. *See In the Matter of Estate of F.C.*, 321 Ark. 191, 900 S.W.2d 200 (Ark.1995) (because paternity action to obtain governmental benefits did not constitute the administration, settlement, or distribution of estates of decedents or the determination of heirship, the probate court did not have jurisdiction to determine the issue of paternity). And because a petition for paternity does not constitute a claim against the putative father's estate, it is not barred by § 473.360.

C. *Whether a conflict exists between the UPA and the UPC.*

In conclusion, the principal opinion asserts that Kelli's opportunity to establish a father-child relationship must give way to statutes governing the appointment of a personal representative. However, the court does not cite to a particular statute that discusses the appointment of a personal representative. Rather, the court points to two different

statutes, § 473.070 and § 210.828.3, and from these argues a conflict exists between the UPA and the UPC. In my opinion, not only is a conflict absent between the UPA and § 473.070, but § 210.828.3 actually supports the idea that a paternity action may be brought beyond the time a decedent's estate is closed.

As recently as last year the Supreme Court in *The Matter of Nocita,* 914 S.W.2d 358 (Mo. banc 1996) stressed the importance of permitting the UPA and the UPC to coexist without conflict where possible. A 26 year-old plaintiff filed a petition seeking both a declaration of paternity and a portion of the decedent's estate as one of decedent's heirs within the UPC's time limit. The decedent's other heirs claimed the plaintiff's petition was time-barred because the plaintiff had failed to bring the action within the UPA's time limit. The Supreme Court permitted the plaintiff's petition and stressed the importance of courts to permit the UPA and the UPC to coexist. "If by any fair interpretation both [the UPA and the UPC] can stand, there is no repeal by implication and both should be given effect." *Nocita,* 914 S.W.2d at 359. Despite this recent admonition by the Supreme Court to promote a symbiotic relationship between the two statutes, the principal opinion finds a conflict between the statutes and declares the UPA must yield.

The first statute the majority cites showing a conflict between the UPA and the UPC is § 473.070, which provided:

In addition to the limitations of time provided in section 473.050, no written will shall be admitted to probate and no administration granted unless application is made to the court for the same within three years from the death of the decedent.

§ 473.070.1 RSMo 1986.[2] The opinion implicitly argues that because the statute required the administration of Michael's estate within three years of his death, any action which required the appointment of a personal representative for Michael is barred after three years since there was no administra-

tion of his estate. Therefore, because Kelli failed to bring her paternity action, open Michael's estate, and have a personal representative appointed within three years of his death, her paternity action is forever barred. The opinion's analysis would be appropriate only if Kelli's claim solely dealt with the administration of Michael's estate.

Although the UPC does not define the term "administration", *Black's Law Dictionary* defines "administration" as:

The management and settlement of the estate of an intestate ... performed under the supervision of a court, by a person duly qualified and legally appointed, and usually involving: 1) the collection of the decedent's assets; 2) payment of debts and claims against the estate; 3) payment of estate taxes; 4) distribution of the remainder of the estate among those entitled thereto.

Black's Law Dictionary 41 (5th edition 1979). Thus, the administration of one's estate clearly deals with the handling of the decedent's assets. But as explained above because Kelli is not seeking any of Michael's assets and is not bringing a claim against a non-existent estate, the paternity petition does not involve the administration of Michael's estate. Where the child is simply seeking a declaration of paternity and is not seeking a portion of the deceased putative father's estate, no estate need be opened and there need not be an administration of the estate. Rather the child should be able to simply bring a petition for a declaration of paternity in the circuit court as provided for in the UPA. § 210.829.1. Thus, I do not believe a conflict exists between § 473.070 and the UPA.

The principal opinion also cites § 210.828.3 as recognizing a conflict exists between the UPA and the UPC and as supporting the idea that a paternity petition must be filed before the UPC's statutory time limitation expires. However, I believe § 210.828.3 not only fails to conflict with the UPC's statute of limitations, but upon a closer examination § 210.328.3 actually supports the postulate

2. 473.370.1 was changed in 1989 from a three year allowance for the administration of an es-

tate to one year. At the time of Michael's death, the time limit was three years.

that a paternity action can be brought after the estate has been closed.

The statute provides:

[The right to determine a father-child relationship] and [the time period for bringing a paternity action] do not extend the time within which a right of inheritance or a right to a succession may be asserted beyond the time provided by law relating to distribution and closing of decedent's estates or to the determination of heirship, or otherwise.

§ 210.828.3.[3] By explicitly stating that the right to determine a father-child relationship cannot extend the time period within which a right to succession or a right of inheritance related to decedent's estate may be brought, the UPA implicitly acknowledges a declaration of paternity may be brought beyond the time an estate is closed. § 210.828.3 merely explains that such a declaration does not then enable the child to bring a claim against the father's probated or non-administered estate after the estate has been closed. It also explains the child cannot then make a claim of inheritance or succession rights which she would normally be entitled to as a lawful heir. By permitting a paternity action after the estate has been closed but refusing to extend the time period for rights of inheritance or succession, § 210.828.3 correctly recognizes that the declaration of paternity is separate from a right of inheritance or succession, the latter constituting a claim against the decedent's estate while the former does not. As such, I do not believe § 210.828.3 evidences a conflict between the UPA and the UPC which would require or even permit the UPA's statute of limitations to be shortened.

Based upon the above, and in light of the Supreme Court's direction in *Nocita,* I do not believe a conflict exists between the UPA and the UPC, and the principal opinion's creation of a conflict is flawed. In summation, I agree with the majority to the extent it dismissed Kelli's appeal for failure to join the proper party. But because I believe the majority's decision permits the child's right to a paternity declaration to be abrogated by an inattentive mother, unjustly deprives the

minor of her right to establish the father-child relationship within the UPA's time limitations, and creates an unnecessary conflict between the UPA and the UPC, I would strike the last full paragraph of the majority's opinion and explain that under the UPA Kelli has the right to bring a paternity petition in the circuit court.

Therefore, I would dismiss this appeal. However, for judicial economy, I would order the trial court to allow Kelli to amend her petition, appoint a personal representative and have a hearing to determine paternity.

---

**3.** The UPA became effective in 1987.