Michael A. FISHER, Appellant,

v.

WASTE MANAGEMENT OF MISSOURI, Respondent,

and

RSK Company, Insurer.

No. SC 83477.

Supreme Court of Missouri,
En Banc.

Oct. 23, 2001.

---

10. *Hargrave,* 34 S.W.3d at 92.

Patrick N. Mehan, Mark F. Haywood, Clayton, for Appellant.

Mary A. Lindsey, Robert N. Hendershot, II, St. Louis, for Respondent.

MICHAEL A. WOLFF, Judge.

When an employer makes surveillance videotapes of an injured employee, must the employer disclose the videotapes as "statements" under the workers' compensation statute?

We hold that a surveillance videotape is a statement under section 287.215[1] of the workers' compensation law and, · as the statute provides, cannot be used unless disclosed after proper request has been made.

**The Claim, Decision and Appeal**

Michael Fisher filed workers' compensation claims against his employer, Waste Management of Missouri, for injuries to his right shoulder occurring in June and September 1997. Fisher's injuries occurred while lifting heavy trashcans.

At a hearing on his workers' compensation claims, two physicians testified by deposition: one rated Fisher as having a 45 percent permanent partial disability, the other physician rated Fisher's disability at three percent. Waste Management offered into evidence several surveillance videotapes made of Fisher. The administrative law judge ruled the tapes inadmissible because the tapes constituted "statements" under section 287.215 that should have been disclosed to Fisher upon his discovery request. The administrative law judge found that Fisher had sustained a 30 percent permanent partial disability of the right shoulder.

On review, the labor and industrial commission held that Waste Management was not required to disclose the surveillance videotapes and ruled three of the tapes admissible. Although the commission said it gave more weight to the one physician's three percent rating than to the other's 45 percent rating, the commission decision also says: "We write this modification to address the administrative law judge's exclusion of surveillance videotapes." Thus, relying primarily upon the videotapes, the commission reduced the award of permanent partial disability from 30 percent to 10 percent.

Fisher appealed the commission's decision, and this Court granted transfer after opinion in the court of appeals. This Court has jurisdiction. Mo. Const. Art. V, sec. 10. This Court's review is confined to the question of law relating to admissibility of the videotapes. Section 287.495.1.

**Interpretation of the Statute**

The decision in this case is entirely dependent upon the words of the statute, section 287.215, which provides in full:

No statement in writing made or given by an injured employee, whether taken and transcribed by a stenographer, signed or unsigned by the injured employee, or any statement which is mechanically or electronically recorded, or taken in writing by another person, or otherwise preserved, shall be admissible

---

1. All references are to RSMo 2000, unless otherwise indicated.

in evidence, used or referred to in any manner at any hearing or action to recover benefits under this law unless a copy thereof is given or furnished the employee, or his dependents in case of death, or their attorney, within fifteen days after written request for it by the injured employee, his dependents in case of death, or by their attorney. The request shall be directed to the employer or its insurer by certified mail.

There are two possible avenues under the workers' compensation law for discovering the surveillance videotapes. The first, not involved here, is to take a deposition of the employer, as authorized by section 287.560, and use a *subpoena duces tecum.* Section 287.560 specifically authorizes any party to "compel the attendance of witnesses and the production of books and papers, and at his own cost to take and use depositions in like manner as in civil cases in the circuit court." *State ex rel. McConaha v. Allen,* 979 S.W.2d 188 (Mo. banc 1998), held that a surveillance videotape is subject to a *subpoena duces tecum* in a workers compensation case because of the statutory language referring to depositions in civil cases. Rule 56.01(b)(3) includes a surveillance videotape in the rule's definition of "statement." *State ex rel. Missouri Pacific R. Co. v. Koehr,* 853 S.W.2d 925, 926 (Mo. banc 1993). Inclusion of the definition of "statement" in Rule 56.01 was made by this Court to "accommodate the General Assembly's enactment of SB 127 in 1989,"

which purported to amend the court rule by adding the definition. *Id.*[2]

The claimant in this case, however, did not use a *subpoena duces tecum,* but rather a request for any and all statements, as authorized by section 287.215, quoted above. That is the second method for obtaining statements, if indeed the surveillance videotapes are included in the definition of "statement" as used in section 287.215. That section does not, however, define the word "statement."

It would be pragmatic for us to hold simply that the statutory enactment of the "statement" definition by the legislature in 1989, and subsequently by this Court in Rule 56.01, covers the concept of statement in section 287.215. For consistency, it would be desirable to have the word "statement" mean the same thing, whether used in context of a *subpoena duces tecum* for a deposition or in a request for statements under section 287.215. The pragmatic choice, of course, is bolstered by the fact that a request for a statement under section 287.215 is far easier and less expensive than using the deposition and *subpoena* procedure of section 287.590.

■ Consideration of pragmatism, consistency and convenience do not wholly govern this decision. The words of the statute are considered first. The legislature adopted a definition of "statement" in SB 127 in 1989, but we cannot infer that SB 127 purports to change or modify section 287.215, since SB 127 makes no reference to that section. Amendments by implication are not favored.[3]

2. SB 127, a bill that enacted statutes relating to the militia, court administration, expert witnesses, court costs and juries, had two enacting clauses, one of which purported to amend Rule 56.01. The Court in *Koehr* noted that the enactment was subject to question under article V, section 5 of the Missouri Constitution because the enactment was not limited to amending the rule. The question

as to the validity of the general assembly's purported rule change was mooted by the Court's adoption of the language in Rule 56.01(b)(3) defining "statement". 853 S.W.2d at 926, n. 1.

3. Mo. Const. art. III, sec. 28 prohibits the general assembly from amending statutes without setting forth in full the statutes so

■ To discern the meaning of section 287.215, its intent and its purpose must be examined. Legislative intent is derived from the statute's words "used in their plain and ordinary meaning." *Budding v. SSM Healthcare System*, 19 S.W.3d 678, 680 (Mo. banc 2000). To discern the statute's purpose, its context with the over-all scheme established by the legislature for adjudicating workers' compensation claims is considered. *A.B. v. Frank*, 657 S.W.2d 625, 628 (Mo. banc 1983).

**Legislative Intent: The Words of the Statute**

■ Section 287.215 was originally enacted in 1959.[4] It does not define the word "statement,"but the language indicates a broad meaning is intended. When a term is not defined, the legislature is not held to a technical meaning, but rather reference is made to the dictionary to find the meaning that the legislature intended. The 1959 contemporary dictionary definition of statement is found in the 1950 edition of Webster's Second International Dictionary:

"1. Act of stating, reciting, or presenting, orally or on paper; as, the *statement* of a case. 2. That which is stated; an embodiment in words of facts or opinions; a narrative; recital; report; account."
WEBSTER'S NEW INTERNATIONAL DICTIONARY 2461(2d ed.1950).[5]

Using the dictionary definition available in 1959, the videotape of claimant Fisher doing physical activity is certainly a "report" on his physical condition. There is no question that information is conveyed in this report. Indeed, the information was persuasive enough to cause the labor and industrial relations commission in this case to reduce Fisher's disability rating from 30 per cent to 10 per cent.

Yet the question can be asked, in context, whether this was a "report" that Fisher made. He certainly participated in this report, however unwillingly or unwittingly. The dictionary definition does not seem to be so limited as only to include reports or statements knowingly or voluntarily made. Nor is the statute so limited. A statement in writing is, in the words of section 287.215, "made or given by an injured employee," but the section goes on

amended. *Sours v. State*, 603 S.W.2d 592, 599 (Mo. banc 1980).

4. Laws 1959 Senate Bill 167 Section 1. The original version of 287.215 read:
    "No statement in writing made or given by an injured employee, whether signed or unsigned, or whether taken and transcribed by a stenographer, signed or unsigned by the injured employee, shall be admissible in evidence, used or referred to in any manner at any hearing or action to recover benefits under this law unless a copy thereof shall be given or furnished the employee, or his dependents in case of death, or their attorney, within seven days after written request for same by the injured employee, his dependents in case of death, or by their attorney."
    Changes since then in 1965 and 1973 made the statute even more expansive, as shown in

the current version quoted in the text. The changes incorporate technology unknown in 1959, such as videotape, and is broadened to include "any statement ... mechanically or electronically recorded ... or otherwise preserved...." Section 287. 215.

5. This Court in *State ex rel. Missouri Pacific R. Co. v. Koehr*, 853 S.W.2d at 926 noted that the currently used definition of "statement" is "at variance" with the definition enacted into rule 56.01(b)(3). In nuanced contrast to the 1950 dictionary definition quoted above, Webster's Third New International Dictionary (1st ed.1961 to 3d ed.1993) is indeed less helpful; it defines "statement" as "the act or process of stating, reciting, or presenting orally or on paper ... 2: something stated: a: as a report or narrative ... b: a single declaration or remark."

to cover "any statement which is mechanically or electronically recorded, or taken in writing by another person, or otherwise preserved...." The latter provisions clearly cover a statement—a report of the claimant—even one made without the claimant's knowledge.

Fisher's conduct, as recorded on the videotape, gave information. Though words are not used, the pictures, according to the Chinese proverb quoted in *State ex rel. Missouri Pacific R. Co. v. Koehr*, 853 S.W.2d 925 (Mo. banc 1993), "are worth more than 10,000 words."

**Legislative Purpose: The Statute in Context**

█ Reading the term "statement" to include surveillance videotapes fits the legislative purpose as discerned from the statutory scheme as a whole. The purpose of workers' compensation proceedings under chapter 287 is to give employees expeditious and simple means of compensation for injuries suffered in the course of employment. *St. Lawrence v. Trans World Airlines, Inc.*, 8 S.W.3d 143, 149 (Mo.App. 1999). Discovery relies largely upon reports including the report of injury and reports of physicians. Sections 287.127 and 287.210. Section 287.210.3, for instance, provides for exchange of medical reports. This informal exchange system is not just for the purpose of preparing for adjudication, but to encourage settlement. The efficient operation of the system depends upon the informal resolution by settlement of the overwhelming majority of the cases.

The workers' compensation scheme does not include interrogatories, requests for admissions, and other wide ranging discovery devices found in this Court's rules that could make the process more complicated and extended than it needs to be. There

is, as noted, a provision for the taking of depositions, along with the power to subpoena witnesses and materials. In many, perhaps most, workers' compensation cases, such a formal mode of discovery is neither necessary nor desirable for economic reasons.

The request for "statements" under section 287.215 is simple and straightforward. The claimant asks for his statements and, if they are not produced, the statements are not admissible in evidence. The statute seems designed to avoid surprises. It would not facilitate settlement to allow the employer to withhold a statement, including a surveillance videotape, so that it may be used as a surprise at a claimant's hearing. That would encourage cases to go to hearings, rather than to be settled. That interpretation would be inconsistent with the over-all purpose of the statute, which is to provide for the easy and informal exchange of information and the settlement of most claims. *Cf. Wilkerson v. Prelutsky*, 943 S.W.2d 643, 649 (Mo. banc 1997).[6]

The commission's ruling admitting into evidence the surveillance videotapes, which had not been disclosed to claimant upon request, was erroneous. The decision of the commission is reversed and remanded.

WHITE, BENTON, LAURA DENVIR STITH and PRICE, JJ., concur; LIMBAUGH, C.J., dissents in separate opinion filed; HOLSTEIN, J., concurs in opinion of LIMBAUGH, C.J.

STEPHEN N. LIMBAUGH, JR., Chief Justice, dissenting.

I respectfully dissent. The dictionary definition of "statement" cannot be stretched to accommodate the majority's policy preference that the definition of "statement" under section 287.215, RSMo

---

6. The holding of *Erbschloe v. General Motors Corp.*, 823 S.W.2d 117, 119 (Mo.App.1992), is to the contrary and should no longer be followed.

1994, should be the same as that under other discovery provisions. Although the majority acknowledges the rule that legislative intent is derived from the statute's words "used in their plain and ordinary meaning," *Budding v. SSM Healthcare Sys.*, 19 S.W.3d 678, 680 (Mo. banc 2000), it then rewrites the statute. In doing so, furthermore, it cavalierly tosses aside this Court's analysis in *State ex rel. Mo. Pac. R.R. Co. v. Koehr*, 853 S.W.2d 925, 926 (Mo. banc 1993), that the dictionary definition of "statement" is "at variance" with the internal definition adopted in a different discovery provision, Rule 56.01(b)(3), which expressly includes "video, motion picture or other recording ... of the party." It then unhesitatingly overrules the Court of Appeals' holding in *Erbschloe v. Gen. Motors Corp.*, 823 S.W.2d 117, 119 (Mo.App.1992), that the term "statement" in section 287.215 does not include videotapes with no audio component.

The dictionary definitions used by the majority bear repeating: A "statement" is:

"1. Act of stating, reciting, or presenting, orally or on paper; as, the *statement* of a case. 2. That which is stated; an embodiment in words of facts or opinions; a narrative; recital; report; account." WEBSTER'S NEW INTERNATIONAL DICTIONARY 2461 (2d ed.1950).

"1: The act or process of stating, reciting, or presenting orally or on paper ... 2: something stated: as a: a report or narrative ... b: a single declaration or remark." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2229 (1st ed.1961 to 3d ed.1993).

The overriding theme of these definitions is that a "statement" is an affirmative act of communication in words, either oral or written. In no way did plaintiff make a "statement" by being filmed surreptitiously while engaged in conduct that was neither intended as a communication nor constituted in words. The majority view that

the surveillance video is best categorized as a "report," as if plaintiff was unwittingly reporting his condition to whoever might see him, is no less untenable. If it is a report, it must be intended as a report, and it must be a report in words.

In this case, the so-called "statement" was a videotape depicting plaintiff, a waste hauler, performing activities incident to his employment—driving a truck, loading trash barrels into the truck by hand, and using a machine to dump larger barrels—all performed without limitation. In determining legislative intent, this conduct is simply not a "statement" in the "plain and ordinary meaning" of the term, and in 1959, when the section was enacted, not a single legislator could envision that section 287.215 would be applied to non-assertive, unspoken and unwritten conduct revealed in a surveillance video.

In sum, I would reaffirm the decisions in *Koehr* and *Erbschloe* and hold that the videotape in question was not a "statement" within the meaning of section 287.215.