Robert LeSAGE, Appellant,

v.

**DIRT CHEAP CIGARETTES AND BEER, INC., Respondent.**

No. SC 84872.

Supreme Court of Missouri, En Banc.

April 22, 2003.

Spencer E. Farris, St. Louis, for appellant.

Mary Anne Lindsey, St. Louis, for respondent.

MICHAEL A. WOLFF, Judge.

Robert LeSage, claiming to be the unwed father of Brandi Roussin's unborn child, brought this action for the wrongful death of the child, who died when Brandi Roussin was shot to death.

The trial court dismissed LeSage's claim. The Court of Appeals, Eastern District, after opinion, transferred the case to this Court. This Court has jurisdiction. Mo. CONST. art. V, sec. 10. The judgment of the circuit court is reversed, and the case is remanded.

The trial court dismissed the wrongful death action, holding that LeSage must first prove paternity under the Uniform Parentage Act, section 210.830, which requires the child to be made a party. Because the child died before he could be made a party, the trial court found that the requirements of the parentage act could not be met. In addition, the court found that the wrongful death statute, sec-

tion 537.080.1(3), did not authorize the appointment of a plaintiff *ad litem*. Since there was no possibility that LeSage could prove paternity under the parentage act after the child's death, the court concluded that LeSage lacked standing under the wrongful death act and dismissed the action with prejudice.

An unwed father may bring a wrongful death action for an unborn child where paternity was not determined before the child's death. A claimant in a wrongful death action must prove the relationship with the deceased so as to show that he is a proper party to bring the action under the wrongful death act, section 537.080.1.[1] Missouri's version of the Uniform Parentage Act, section 210.817 *et seq.*, is not the exclusive means of proving paternity for the purposes of a wrongful death action. However, the evidentiary requirements of the parentage act provide the means of proving paternity. Because the wrongful death act pre-dates the parentage act, and nothing in the parentage act explicitly amends the wrongful death statute, the procedural requirements of the parentage act cannot be read to bar proof of parentage in a wrongful death action.

One of the facts that LeSage will be required to prove is that he is the child's father; the evidentiary standards and presumptions of the parentage act will be used in attempting to prove this fact.

**Facts**

On October 29, 2000, Brandi Roussin was shot and killed during a robbery while working for Dirt Cheap Cigarettes and Beer, Inc. At the request of Dirt Cheap, she was transporting approximately $13,000. At the time of her death, she was five months pregnant. The unborn child also died as a result of the shooting.

Robert LeSage, Brandi Roussin's fiancé and the putative father of her child, subsequently brought a wrongful death action against Dirt Cheap for loss of his unborn child. In his petition, LeSage alleged that Dirt Cheap required Roussin to carry and transport large sums of money without adequate security and protection. He alleged that Dirt Cheap knew of frequent crime in the area around the store and, thus, was negligent in failing to protect Roussin.

To support his assertion that he is the father, LeSage alleged he had cohabited with Roussin and engaged in sexual intercourse with her during the possible time of conception. Although LeSage and Roussin were not married at the time of the shooting, they were engaged to be married approximately three weeks from the date of the death of Roussin and her unborn child. LeSage also presented Roussin's prenatal record, which lists him as the father.

### The Wrongful Death Act and *Connor v. Monkem*

The effect of the trial court's dismissal of LeSage's claim is to render meaningless, as to unmarried fathers, this Court's decision in *Connor v. Monkem Co., Inc.*, 898 S.W.2d 89 (Mo. banc 1995). *Connor* held that a father can bring a wrongful death action for the death of an unborn child under section 537.080.1(1), which allows a father to bring a wrongful death action for the death of his child.[2]

1. All references are to RSMo 2000 unless otherwise indicated.

2. Section 537.080.1 provides:
   Whenever the death of a person results from any act, conduct, occurrence, transac-

tion, or circumstance which, if death had not ensued, would have entitled such person to recover damages in respect thereof, the person or party who, or the corporation which, would have been liable if death had not ensued shall be liable in an action for

In *Connor*, as in the present case, an unwed father sought to bring a wrongful death action for his unborn child. *Connor* concluded that the term "person" within the wrongful death statute included a nonviable, unborn child. 898 S.W.2d at 92.[3]

Because Conner was not married to the mother of the dead unborn child, this Court in a footnote added the obvious: "an unmarried father must prove paternity." *Id.* at 90 n. 3. Because it was not an issue in *Conner*, this Court did not deal with how a putative father should establish paternity for the purpose of bringing a wrongful death action. It is this unanswered question that is presented here.

## Proving Paternity

Starting from the premise that the Uniform Parentage Act is the "exclusive" means for establishing paternity in Missouri, Dirt Cheap argues that LeSage should not be allowed to establish paternity posthumously.[4] In other words, Dirt Cheap contends that, because LeSage did not take affirmative steps to establish paternity prior to the death of the unborn child, he should not be able to prove paternity now that the unborn child is deceased.[5]

Dirt Cheap argues that section 210.830, which provides that "[t]he child shall be made a party to any action" commenced for the purpose of establishing paternity, precludes LeSage from proceeding with a paternity action because the child—now dead—cannot be made a party to the action. In examining the legislative purpose, Dirt Cheap argues that the Uniform Parentage Act shows no intent that paternity actions be brought posthumously. The purpose of the act, Dirt Cheap contends, is not to protect unwed fathers, but to protect the custody and support interests of children. Because these interests termi-

damages, notwithstanding the death of the person injured, which damages may be sued for:

(1) By the spouse or children or the surviving lineal descendants of any deceased children, natural or adopted, legitimate or illegitimate, or by the father or mother of the deceased, natural or adoptive;

(2) If there be no persons in class (1) entitled to bring the action, then by the brother or sister of the deceased, or their descendants, who can establish his or her right to those damages set out in section 537.090 because of the death;

(3) If there be no persons in class (1) or (2) entitled to bring the action, then by a plaintiff ad litem. Such plaintiff ad litem shall be appointed by the court having jurisdiction over the action for damages provided in this section upon application of some person entitled to share in the proceeds of such action. Such plaintiff ad litem shall be some suitable person competent to prosecute such action and whose appointment is requested on behalf of those persons entitled to share in the proceeds of such action. Such court may, in its discretion, require that such

plaintiff ad litem give bond for the faithful performance of his duties.

3. The United States Supreme Court has held that a state cannot deny a parent of an illegitimate child the right to bring an action for the wrongful death of a child if the state gives a parent of a legitimate child the same right. *Glona v. Am. Guarantee & Liab. Ins. Co. et al.*, 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968).

4. Dirt Cheap, as did the trial court, relies on statements in *Snead v. Cordes*, 811 S.W.2d 391 (Mo.App.1991); *Poole Truck Lines Inc. v. Coates*, 833 S.W.2d 876 (Mo.App.1992); *Richie By and Through Laususe v. Laususe*, 950 S.W.2d 511 (Mo.App.1997). To the extent that these cases lead to the conclusion that the parentage act is the exclusive means for establishing paternity in actions brought under the wrongful death act, they should not be followed.

5. While Dirt Cheap uses the medical term "fetus," it seems appropriate, where the mother apparently had chosen to carry the fetus to term, to use the phrase "unborn child." *Connor*, 898 S.W.2d at 90.

nate when an unborn child dies before a paternity action is brought, Dirt Cheap argues that a determination of paternity after the unborn child's death would not serve any purpose for which the parentage act was enacted.

Since the "exclusive" means for determining paternity are not available to LeSage, Dirt Cheap argues that LeSage is unable to establish paternity as required under *Connor* and the wrongful death statute and, therefore, lacks standing to bring a wrongful death action.

The entire argument of Dirt Cheap is premised on its contention that the parentage act is the "exclusive" means of proving paternity and that the parentage act's procedural requirement—that the child be joined as a party—bars LeSage's claim because the child is dead and cannot be made a party.

The premise is incorrect, as shown by *In re Nocita*, 914 S.W.2d 358 (Mo. banc 1996). *Nocita* held that, in matters relating to probate, the probate code—and not the Uniform Parentage Act—governs determinations of paternity. 914 S.W.2d at 359. The General Assembly, according to *Nocita*, "refused to make the Parentage Act the exclusive means to establish paternity for probate." *Id.* at 359.

In *Nocita*, an illegitimate child was attempting to establish paternity so that he could inherit from his alleged father by intestate succession. Because he was past 18 years of age, the Nocita family argued the child's claim was barred by the parentage act's provision that a paternity action "may not be brought later than eighteen years after the birth of the child. . . ." Section 210.828.1. At that time, however, the probate code allowed a paternity action after the death of the father so long as the action was brought within "six months of

the date of the first publication of letters. . . ." Section 473.070.2, RSMo 1994. *Nocita* noted that the legislature passed the parentage act without altering the probate code. This Court recognized that the two statutes were not intended to modify or affect each other. 914 S.W.2d at 359.

■ Similarly, Missouri's adoption of the parentage act in 1987 occurred long after enactment of the wrongful death statute. Section 537.080 provides that the father of a deceased child may bring a wrongful death action. The wrongful death act does not specify how paternity is to be determined. The version of the Uniform Parentage Act adopted by this state does not explicitly provide that it is the "exclusive" means to prove paternity. The General Assembly has not adopted the current version of the Uniform Parentage Act (2000), which does provide that the parentage act is to be the exclusive means of proving paternity. This Court cannot read into the Missouri legislation provisions of the uniform law that have not been adopted.

■ The Court, therefore, cannot read the parentage act as amending the wrongful death statute to preclude LeSage's claim. Where the legislature amends a statute, it must do so explicitly. "Amendments by implication are not favored." *Fisher v. Waste Mgmt. of Missouri*, 58 S.W.3d 523, 525 (Mo. banc 2001).

It does no violence to the wrongful death statute, however, to use the evidentiary standards and presumptions of the parentage act in proving paternity. For example, section 210.836 provides a list of various sources of evidence that can establish paternity, and section 210.822 provides situations where there is a presumption of paternity.[6] However, there is no indication that the procedural limitations of the

6. Evidence of paternity includes proof of sex-    ual intercourse between the mother and al-

parentage act—such as those requiring that the child at issue be a named party and be age 18 or younger [7]—were intended to amend the wrongful death statute to prevent a parent from bringing an action for the death of a child.[8]

Before the enactment of the parentage act, paternity in wrongful death actions was a factual issue: the party alleging paternity presented evidence to show that he was the biological father.[9] Paternity is still a factual issue. What the Uniform Parentage Act provides are evidentiary provisions and presumptions that are useful in proving paternity; these for the most part restate the law as it has arisen from the cases.[10]

## Conclusion

One of the elements LeSage must prove in his wrongful death action is that he is the father of Roussin's unborn child. Section 537.080.1. Since he was not married to Roussin, LeSage does not have the benefit of a presumption of paternity.[11] He must persuade the finder of fact that he is the child's father. If he proves that he is the father of the unborn child, that the child died as a result of Dirt Cheap's negligence, and that LeSage thereby suffered damages, he will be entitled to recover.[12]

leged father during the possible time of conception, blood test results or other medical evidence and "[a]ll other evidence relevant to the issue of the paternity of the child." Section 210.836. A presumption of paternity arises where the presumed father and natural mother are married or attempted to become legally married when the child is born, where the presumed father and natural mother are married or attempted to become legally married after the child's birth and the father acknowledges paternity in writing, consents to being named the father on the birth certificate or is obligated to support the child, and where an expert concludes that blood tests show the alleged parent is not excluded and the probability of paternity is 98% or higher. Section 210.822.

7. Section 210.830 requires that the child or the child's next friend be a named party. Section 210.828 provides that "[a]n action to determine the existence of the father and child relationship as to a child who has no presumed father under section 210.822 may not be brought later than eighteen years after the birth of the child. . . ."

8. Even if LeSage had brought a paternity action before the child's death, it would have been of no use. Section 210.826.4 says that an action brought prior to a child's birth is automatically stayed until after birth. The action would be dismissed where the child dies before birth.

9. See Cobb v. State Sec. Ins. Co., 576 S.W.2d 726, 735 (Mo. banc 1979) (father acknowl-

edged the child was his to the biological mother and to others; cohabited with the mother and child; provided the child with support and affection), and Glasco v. Fire and Cas. Ins. Co., 709 S.W.2d 550, 554 (Mo.App. 1986) ("The issues of Alford's support of and contact with the child are properly concerned with proof of paternity. . . .").

10. In addition to cases cited in footnote 9, supra, see In re L, 499 S.W.2d 490 (Mo. banc 1973) (The presumption that a child born in wedlock is legitimate is rebuttable only by substantial and clear proof to the contrary.); State ex rel. T.A.B. v. Corrigan, 600 S.W.2d 87 (Mo.App.1980) (A putative father may acknowledge his child by filing an affidavit stating that he is the father, placing his name on the child's birth certificate, or seeking admission of paternity from the mother to be filed with the court.); T.A.L.S. v. R.D.B., 539 S.W.2d 737 (Mo.App.1976) (Admissible evidence to establish paternity included mother's statements that the putative father was the father of the child and that she had sexual intercourse with no other man until approximately five months before the birth of the child); and State ex rel. D.K.B. by V.R.B. v. W.G.I., 654 S.W.2d 218 (Mo.App.1983) (Putative father's blood test results are admissible as proof of paternity.).

11. See section 210.822.

12. The claim of a putative father who lacks evidence to show paternity can be disposed of by summary judgment. Rule 74.04(b).

The trial court's judgment is reversed, and the case is remanded.

WHITE, BENTON, STITH, PRICE and TEITELMAN, JJ., concur.

LIMBAUGH, C.J., concurs in separate opinion filed.

STEPHEN N. LIMBAUGH, JR., Chief Justice, concurring.

I concur in the outcome of the case. I disagree, however, with the majority's novel conclusion that the "evidentiary standards and presumptions of the parentage act [should] be used in attempting to prove [paternity]" but that the procedures and deadlines set forth in the UPA should be ignored. To my knowledge, this Court has never before condoned the practice of selective partial application of a statute, and I am unconvinced that it is necessary to do so here. Instead, I would hold that the UPA remains the exclusive mechanism, both substantively and procedurally, to establish paternity in Missouri. This holding would be limited only in cases where a statute explicitly conflicts with the terms of the UPA, and in cases involving unborn children—cases that the UPA does not address.

On numerous occasions, Missouri courts have held that the UPA provides the exclusive means of establishing paternity, *Richie By and Through Laususe v. Laususe,* 950 S.W.2d 511, 514 (Mo.App.1997); *Piel v. Piel,* 918 S.W.2d 373, 375 (Mo.App.1996); *Roberts v. Roberts,* 920 S.W.2d 144, 146 (Mo.App.1996); *State ex rel. K.R. v. Brashear,* 841 S.W.2d 754, 756 (Mo.App. 1992); *Poole Truck Lines Inc. v. Coates,* 833 S.W.2d 876, 877–78 (Mo.App.1992), including in cases involving wrongful death actions, *Laususe v. Normandy Osteopathic Hosp.,* 918 S.W.2d 953, 956 (Mo.App. 1996); *Snead v. Cordes,* 811 S.W.2d 391, 395 (Mo.App.1991). Indeed, the UPA, itself, declares its exclusivity: "The provisions of [the Act] shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of [the Act] among the states enacting it." Section 210.850.

Despite the clear language of section 210.850, the majority maintains that nothing in the version of the UPA adopted by Missouri explicitly provides its exclusivity. In support, the majority cites to the new, 2000 version of the Uniform Parentage Act, not yet adopted by the General Assembly, that contains a section providing that the UPA shall be used to establish paternity "for all purposes," as if Missouri's current version of the UPA does not so provide. UNIF. PARENTAGE ACT sec. 203, 9B U.L.A. 310 (2001). The majority, however, neglects to account for the official comment to this section, which admits that the section "may seem to state the obvious" but that its inclusion is necessary to prevent "erroneous statutory constructions." *Id.* at cmt. to sec. 203. In this case, it appears to me that the majority is guilty of committing the kind of "erroneous statutory construction" that the new version of the UPA more proactively seeks to prevent.

To be sure, "the legislature's purpose of providing a uniform procedure for determining paternity would not be well served by permitting paternity to be determined outside of the UPA." *Poole,* 833 S.W.2d at 878. Accordingly, it is my contention—one that is supported by Missouri case law and the UPA itself—that as a general rule, the UPA is the exclusive mechanism for determining paternity, absent the existence of a statute that explicitly states otherwise. For instance, this Court has held that because the probate code expressly speaks to paternity, it is the code, rather than the UPA, that governs determinations of paternity in matters relating to probate. *In re Nocita,* 914 S.W.2d 358 (Mo. banc 1996). In contrast, the wrongful death act is silent on the question of paternity.

This case, however, presents the unusual circumstance that a father has a right to establish paternity, but the UPA does not provide him a means to do so. In *Connor v. Monkem Co.*, 898 S.W.2d 89 (Mo. banc 1995), this Court held that an unwed father may bring a wrongful death action for the death of his unborn child if the father can prove paternity. Nonetheless, the UPA does not contain a procedure by which an unwed father can prove paternity before the child is born, and in fact, it provides that all paternity proceedings are stayed until the child is born. Sec. 210.826.4. Therefore, consistent with our holding in *Connor*, plaintiff, an unwed father, must be permitted to establish paternity of the unborn child in a declaratory judgment action outside the UPA.

This conclusion, however, should not affect the exclusivity of the UPA in all other matters except probate. Because the UPA provides a mechanism for unwed fathers to establish paternity once the child is born, there is no need to provide a separate mechanism in wrongful death cases or other categories of cases.