In the Missouri Court of Appeals
 Eastern District
IN THE ESTATE OF: ) No. ED108755
WILLIAM IRA ANDRESS, )
 DECEASED )
 )
 Appellant. ) Appeal from the Circuit Court
 ) of Saint Louis County
 ) 18SL-PR01200
 )
 ) Honorable Ellen S. Levy
 )
 ) Filed: May 11, 2021

 Introduction

 Rebecca Pierce, Mark Andress, Miles Andress, and Angela Kuda (together,

“Appellants”) appeal from the judgment of the St. Louis County Circuit Court, Probate Division

(“Probate court”) granting the Petition for Determination of Heirship filed by Daniel J. Palmer

(“Palmer”). We affirm.

 Background

 In June 2019, Palmer filed a Petition for Determination of Heirship (“Petition”), asserting

he was entitled to an equal share of the Estate of William Andress (“Decedent”). In his Petition,

he asserted the following. Decedent died intestate in January 2018. Peter Andress (“Peter”),

deceased, was a natural and biological son of Decedent. In 1974, Peter engaged in sexual

intercourse with Diana Lederle (“Lederle”), resulting in Palmer’s birth in April 1975. Because

Palmer was the living and biological son of Peter, he was an heir at law of Decedent and was
entitled to an equal share of Decedent’s estate under Section 474.010(2)(a),1 in that Palmer is a

descendant of Decedent’s child. Rebecca Pierce, a living heir of Decedent, objected to Palmer’s

Petition. Palmer filed a motion to compel DNA testing, asserting that, although paternity had not

previously been determined before Peter’s death, Palmer could be established as Peter’s son

through avuncular DNA testing of Peter’s siblings. The Probate court granted the motion to

compel DNA testing under Missouri Rule of Civil Procedure 60.01(a)(1).2 Appellants plus Amy

Youngstrom, all living heirs of Decedent and siblings of Peter, then filed a motion to exclude

both their privileged healthcare information and the testimony of George Maha, J.D., Ph.D.,

(“Dr. Maha”) at trial. They asserted their medical records, including any DNA tests, were not

admissible at trial under the physician-patient privilege, and that Dr. Maha did not qualify as an

expert witness and his deposition testimony was unreliable. The Probate court denied the motion

after a hearing.

 At a bench trial before Commissioner William J. Gust, the following evidence was

adduced.3 The Decedent had nine children: Janice Andress (“Janice”),4 Peter, Paul Andress

(“Paul”), Rebecca Pierce, Annamarie Francis, Timothy Mark Andress, Amy Youngstrom, Miles

Andress, and Angela Kuda. At the time of the trial, Peter and Paul were deceased and the

remaining siblings were still living, and Paul had one living child, Corey Andress (“Corey”).5

Palmer testified to the following. Lederle was his mother and is deceased. When he was born,

his mother was married to Gary Robidoux (“Robidoux”), but Robidoux was not his biological

1
 All statutory references are to RSMo. (cum. supp. 2019), unless otherwise indicated.
2
 All rule references are to the Missouri Rules of Civil Procedure (2019), unless otherwise indicated.
3
 The parties are familiar with the facts. For ease of analysis, we discuss some facts in the Discussion section not
included in the Background section.
4
 Janice Andress did not oppose Palmer’s Petition for Determination of Heirship, and she voluntarily provided her
DNA for comparison.
5
 Corey Andress did not oppose Palmer’s Petition and voluntarily provided his DNA for comparison.

 2
father and Robidoux’s name was not entered on Palmer’s birth certificate. His mother told him

on multiple occasions that Peter was his biological father but Palmer never met Peter. Lederle

later married John Palmer, whom she met after Palmer’s birth. Palmer took his step-father’s

name when he was 16 years old, but John Palmer did not legally adopt Palmer. During the

pendency of this case, Palmer and Janice voluntarily submitted to avuncular DNA testing, which

determined there was a 99.1943 percent probability that Janice was Palmer’s aunt, as compared

to an untested, unrelated person of the general population. The DNA results were admitted by

the Probate court over hearsay and foundation objections.

 Over objections, Palmer submitted the deposition and report of Dr. Maha and requested

he be endorsed as an expert in the field of paternity and relationship testing. The Probate court

received the report into evidence and ultimately found Dr. Maha qualified as an expert witness in

the field of paternity. Dr. Maha’s deposition and report revealed the following. In the summer

of 2019, Palmer, Janice, Corey, Appellants, and Amy Youngstrom all submitted DNA samples to

Laboratory Corporation (“LabCorp”). Dr. Maha performed testing on the DNA samples

submitted. Dr. Maha testified the likelihood that Appellants and Amy Youngstrom are related to

Palmer is 99.9962% more likely than someone of the general population, and he opined within a

reasonable degree of medical certainty that a brother of Appellants and Amy Youngstrom was

likely to be the father of Palmer.

 Following the trial, the Probate court granted Palmer’s Petition after determining Palmer

had established by clear and convincing evidence he was the natural and biological son of Peter

and thus was entitled to his intestate share of Decedent’s estate. The Honorable Ellen S. Levy

confirmed the Commissioner’s judgment. This appeal follows.

 Discussion

 3
 Point I

 In their first point on appeal, Appellants argue the Probate court erred in admitting their

DNA evidence because the evidence was privileged and inadmissible, in that the DNA results

were protected by the physician-patient privilege. We disagree.

 We review de novo the Probate court’s admission of the DNA evidence because the

admission concerned the interpretation of a statute, which is a question of law. State ex rel.

Nothum v. Walsh, 380 S.W.3d 557, 561 (Mo. banc 2016). This Court’s primary rule in

interpreting statutes is to ascertain the intent of the legislature from the language used in the

statute, considering the words in their plain and ordinary meaning, and to give effect to that

intent. Li Lin v. Ellis, 594 S.W.3d 238, 241-42 (Mo. banc 2000).

 Section 491.060(5) provides that a licensed physician shall be incompetent to testify

concerning any information that he or she may have acquired from any patient while attending

the patient in a professional character that was necessary to enable him or her to provide

treatment for the patient. We strictly construe statutes that create privileges. State ex rel. Health

Midwest Dev. Group, Inc. v. Daugherty, 965 S.W.2d 841, 843 (Mo. banc 1998). Claims of

privileges are “impediments to discovery of truth” and are contrary to the usual rules of

evidence, and thus we carefully scrutinize these claims for whether excluding the relevant

evidence serves a greater public good. Id. The purpose of the physician-patient privilege is to

allow the patient to obtain complete and appropriate treatment by encouraging candid

communication between patient and physician without fear of an invasion of privacy from the

unauthorized disclosure of that information. See State ex rel. Dean v. Cunningham, 182 S.W.3d

561, 567 (Mo. banc 2006).

 4
 Applying both the plain language and the intent of the statute, in order for Section

491.060(5)’s privilege to apply, the physician must both have acquired the information while

attending to the patient in a professional character and the information must have been necessary

to enable the physician to provide complete and appropriate treatment for the patient. See id.

(reiterating that under language of statute, patient-physician privilege applies to information

physician acquired from patient while attending patient and that was necessary to allow

physician to provide treatment to patient). Again, we apply privileges strictly, as they are an

inherent impediment to the discovery of truth. See Daugherty, 965 S.W.2d at 843.

 Here, Appellants sought to prevent Dr. Maha from testifying at trial to the results of their

DNA tests, asserting the results were privileged medical records not admissible under the

physician-patient privilege. However, because Dr. Maha neither attended Appellants as patients

in a professional character nor provided them treatment, the physician-patient privilege does not

apply. The law’s interest that a patient be able to have candid communications with his or her

physician in order to obtain complete and appropriate treatment is simply not at issue here. See

Cunningham, 182 S.W.3d at 567.

 Rather, the medical records in question here are DNA results gathered pursuant to a valid

court order under Rule 60.01 for the limited purpose of establishing paternity. Rule 60.01(a)(1)

allows a trial court to order a party to submit to and produce blood examinations when the blood

relationship of a party is in controversy in the action. It is allowable to use Rule 60.01 for the

purpose of determining paternity. See, e.g., State ex rel. D--- K--- B--- by V--- R--- B--- v. W---

G--- I---, 654 S.W.2d 218, 219-20 (Mo. App. E.D. 1983). If a person were able to prevent their

DNA from being used in court to establish a blood relationship by contorting the physician-

patient privilege beyond what its plain language dictates, then Rule 60.01’s language allowing

 5
courts to order blood examinations to determine blood relationships would be a nullity. Courts

eschew interpretations of laws, and likewise those of rules, that render any provision a nullity

because such interpretations do not give effect to the plain language of the law. Cf. State v.

Knox, 604 S.W.3d 316, 322 (Mo. banc 2020).

 Regardless, if there was any error in the admission of Appellants’ DNA evidence here it

was harmless because Appellants’ DNA evidence was cumulative to other DNA evidence

submitted that Janice was 99% more likely to be Palmer’s aunt than the general public. Janice

did not raise the physician-patient privilege to prevent admission of her DNA results.

Considering the specific facts of the situation here, Appellants’ claim that their privacy was

invaded by evidence that they, like their sister, were aunts and uncles to a person already

established to be their nephew is not supported by logic. The Probate court did not err in

admitting Appellants’ DNA evidence.

 Point I is denied.

 Point II

 In their second point on appeal, Appellants argue the Probate court erred in admitting the

testimony of Dr. Maha because he did not qualify as an expert witness, in that his testimony and

opinions were not reasonably reliable, he did not disclose all of the facts and data he relied on,

and the court did not perform an independent assessment of the reliability of the testimony. We

disagree.

 Although Appellants propose we review this point de novo, the correct standard of

review on appeal for the admission of expert testimony is for an abuse of discretion. Klotz v. St.

Anthony’s Med. Ctr., 311 S.W.3d 752, 760 (Mo. banc 2010) (“[t]he trial court’s decision whether

to admit an expert’s testimony will not be disturbed on appeal absent an abuse of discretion”).

 6
The legal basis for when to admit expert testimony is set forth in the expert witness statute,

Section 490.065, and the trial court abuses its discretion when it improperly includes or excludes

expert testimony contrary to its findings regarding those statutory elements. See Kivland v.

Columbia Orthopaedic Group, LLP, 331 S.W.3d 299, 311 (Mo. banc 2011). For an evidentiary

error to compel reversal, the error must have resulted in prejudice, which occurs only when the

error affects the outcome of the trial. See Campbell v. Union Pac. R.R. Co., 616 S.W.3d 451,

474 (Mo. App. W.D. 2020); Bowolak v. Mercy E. Communities, 452 S.W.3d 688, 703 (Mo. App.

E.D. 2014).

 Section 490.065.1 controls the admissibility of expert testimony in all proceedings before

the probate division of the circuit court. Specifically, it states:

 (1) If scientific, technical or other specialized knowledge will assist the trier
 of fact to understand the evidence or to determine a fact in issue, a
 witness qualified as an expert by knowledge, skill, experience, training,
 or education may testify thereto in the form of an opinion or otherwise;

 …

 (3) The facts or data in a particular case upon which an expert bases an
 opinion or inference may be those perceived or made known to him at
 or before the hearing and must be a type reasonably relied upon by
 experts in the field in forming opinions or inferences upon the subject
 and must otherwise be reasonably reliable.

Section 490.065.1(1), (3); Murrell v. State, 215 S.W.3d 96, 110 (Mo. banc 2007) (considering

admissibility of expert witness testimony under Sections 490.065.1(1) and (3)).

 Appellants do not challenge Dr. Maha’s qualifications as an expert witness, but they

argue on appeal that Dr. Maha’s testimony regarding the DNA results was not reasonably

reliable, in that he did not disclose all the facts and data he relied on in forming his opinion

before giving his deposition. The statute itself requires that the facts or data on which the expert

relied must be the type reasonably relied upon by experts in the field and “must otherwise be

 7
reasonably reliable.” Testimony is reliable for purposes of Section 490.065 if it is based on

widely accepted and peer-reviewed principals and methods, sufficient facts or data, and reliable

application thereof. See Murrell, 215 S.W.3d at 111; State Bd. of Registration for Hearing Arts

v. McDonagh, 123 S.W.3d 146, 157 (Mo. banc 2003); cf. State ex rel. Gardner v. Wright, 562

S.W.3d 311, 319 (Mo. App. E.D. 2018) (discussing standards for reliability of expert testimony

in context of Section 490.065.2 for criminal cases). Despite suggestions by Appellants, there is

no specifically required procedure by which a trial court determines the testimony to “otherwise

be reasonably reliable,” so long as some independent determination of the overall reliability of

the evidence occurs. See Section 490.065.1(3).

 Here, the facts and data Dr. Maha relied on in reaching his opinion were of the type

reasonably relied upon by experts in the field in forming opinions and was otherwise reasonably

reliable. Dr. Maha submitted a Relationship Report and declaration that reflected the following.

Samples were collected from Palmer, Amy Youngstrom, Rebecca Pierce, Angela Kuda, Mark

Andress, and Miles Andress with a sworn statement from the collector certifying the samples

were packaged and sealed in the box without tampering. When LabCorp received the samples

for testing, the containers were sealed and there were no signs of tampering, and thus Dr. Maha

had no concerns with possible degradation or contamination of any of the samples tested in this

case. LabCorp employees conducted tests of the above samples that were both of a type

reasonably relied upon and performed in a manner customarily relied upon by experts in the field

of paternity and parentage relationship testing, that met the standards prescribed by the AAPP

Standards for Relationship Testing, and using procedures used in the ordinary course of business.

Finally, the results of the tests were prepared at or near the time of completion of the genetic

tests by the duly qualified LabCorp personnel. This evidence was sufficient to demonstrate the

 8
facts and data upon which Dr. Maha based his opinion were the type of widely accepted and

peer-reviewed principles and methods for relationship testing and that LabCorp engaged in a

reliable application of these principles and methods. See Section 490.065.1(3); Murrell, 215

S.W.3d at 111; McDonagh, 123 S.W.3d at 157; Wright, 562 S.W.3d at 319.

 To the extent Appellants challenge the specific facts and data underpinning Dr. Maha’s

opinion, this argument goes to the weight not the admissibility of Dr. Maha’s expert testimony.

See Elliot v. State, 215 S.W.3d 88, 85 (Mo. banc 2007) (“[a]ny weakness in the factual

underpinnings of the expert’s opinion … goes to the weight that testimony should be given and

not its admissibility”) (citation omitted). Here, Dr. Maha’s opinion testimony on the DNA

results was admissible under Section 490.065.1 because it was of a type reasonably relied upon

by experts in the field of relationship testing in forming opinions and was otherwise reasonably

reliable. Any further questions, then, about the particular details of Dr. Maha’s analysis and data

speak to the weight, not admissibility, of his opinion.

 As for Appellants’ argument that the Probate court failed to conduct an independent

review of the reliability of Dr. Maha’s testimony, this contention is not supported by the

evidence. In its findings, the trial court found that Dr. Maha used a standard procedure in his

DNA testing, that the specific regions of extracted DNA tested were ones customarily relied

upon by experts in the field of paternity and parentage relationship testing, and that there were no

concerns with contamination or degradation for the specific samples tested here. Under the

circumstances here, these findings were sufficient to meet the Probate court’s independent duty

to assess the reliability of Dr. Maha’s testimony. The Probate court did not abuse its discretion

in admitting Dr. Maha’s testimony.

 Point II is denied.

 9
 Point III

 In their third and final point on appeal, Appellants argue the Probate court erred in

finding there was clear and convincing evidence to grant Palmer’s Petition because it was against

the weight of the evidence, in that there were legal presumptions that Robidoux and John Palmer

were Palmer’s father, and Palmer’s evidence consisted of testimony not based on personal

knowledge, hearsay, and unreliable and inconclusive expert testimony. We disagree.

 We review court-tried cases under the standard set forth in Murphy v. Carron, 536

S.W.2d 30, 32 (Mo. banc 1976), which is that we will sustain the trial court’s judgment unless

there is no substantial evidence to support it, it is against the weight of the evidence, or it

erroneously declares the law. Robbie v. Gerstner, 733 S.W.2d 859, 860 (Mo. App. E.D. 1987).

Appellants here argue that the judgment was against the weight of the evidence. The term

“weight of the evidence” presumes that some evidence exists to support the judgment, but

challenges how much persuasive value that evidence has. Ivie v. Smith, 439 S.W.3d 189, 205-06

(Mo. banc 2014). “Appellate courts act with caution in exercising the power to set aside a decree

or judgment on the ground that it is against the weight of the evidence[,] … and will only

reverse in rare cases when it has a firm belief that the decree or judgment was wrong.” Id.

 Section 474.060 provides that for purposes of intestate succession, a petitioner must

establish paternity after the death of the father by clear and convincing evidence. See

474.060.2(2); Robbie, 733 S.W.2d at 860. Such clear and convincing evidence exists here. Dr.

Maha testified that he performed avuncular DNA testing on samples provided by Palmer and

Appellants, the results of which showed that Appellants and Palmer are 99.9962% more likely to

be related than someone of the general population. On this evidence, Dr. Maha opined within a

reasonable degree of medical certainty that a brother of Appellants was likely to be the father of

 10
Palmer. The only brothers of Appellants are Peter and Paul, both of whom are deceased. Palmer

testified at trial without objection that his mother told him his biological father was Peter.

Robidoux testified by deposition that, although he was married to Lederle at the time of Palmer’s

birth, he was not Palmer’s father; rather, Tom Lederle, Lederle’s brother, told Robidoux that

Peter was Palmer’s biological father. Karen Doll, Lederle’s friend, and Darlene Payton,

Lederle’s sister, both testified by deposition that Lederle had told them that Peter was Palmer’s

biological father. When asked if they had any objection to the admission of the deposition

testimony by Robidoux, Karen Doll, or Darlene Payton, Appellants affirmatively stated they did

not.

 Despite Appellants’ claims to the contrary, this evidence has high probative value and,

when considering the entire record, the Probate court’s judgment was not against the weight of

the evidence. See Ivie, 439 S.W.3d at 205-06. Appellants contend that the DNA evidence only

proved that either Peter or Paul could have been Palmer’s biological father; however, the

overwhelming weight of the evidence showed that Peter, not Paul, fathered Palmer. While

Lederle could not testify on her own behalf, multiple disinterested witnesses testified that

Lederle had told each of them separately on many occasions that Peter was Palmer’s biological

father. There was no such evidence in the record regarding Paul. Although Appellants contend

the evidence that Peter and Paul had the same group of friends—which included Lederle—and

frequently fought over girls created a reasonable possibility of a sexual relationship between

Lederle and Paul, this argument is supported by nothing but supposition. Not only is there no

evidence supporting a conclusion that Paul could have been Palmer’s father, the record includes

evidence that weighs against the supposition. Specifically, both Palmer and Corey, Paul’s son,

 11
testified that they would sometimes play together as children, at which time they were introduced

to each other as cousins, not as brothers.

 Last, while Appellants assert in their Point Relied On that any witnesses’ attestations of

what Lederle said during her lifetime should be discounted as hearsay evidence, Appellants

waived any right to assert error on this issue on appeal by affirmatively stating during the trial

that they had “no objection” to the admission of the evidence. See State v. Baker, 102 S.W.3d

711, 716 (Mo. banc 2003) (“Missouri courts have consistently held that stating “no objection”

when evidence is introduced precludes direct appellate review of the admission”). Rather, the

evidence was admitted without objection and was properly considered by the Probate court. On

the record here, the Probate court did not err in finding clear and convincing evidence that

Palmer was the biological son of Peter, and thus granting Palmer’s Petition for Heirship from the

estate of Decedent.

 Although Palmer established paternity with clear and convincing evidence for the

purposes of Section 474.060.2(2), Appellants nevertheless argue that Palmer was unable to

overcome the legal presumptions set forth in Section 210.822 of the Uniform Parentage Act (“the

UPA”) that Robidoux and/or John Palmer were Palmer’s father. Paternity can be established

either under the UPA or the Probate Code. Matter of Nocita, 914 S.W.2d 358, 359 (Mo. banc

1996) (noting that “[b]ecause the legislature passed the Parentage Act without conforming the

Probate Code, the General assembly refused to make the Parentage Act the exclusive means to

establish paternity for probate”). The Missouri Supreme Court in Nocita considered the question

of whether a child can prove paternity during probate after the statute of limitations in the UPA

has passed, and answered in the affirmative, finding that the Probate Code, rather than the UPA,

governs whether an illegitimate child can inherit by intestate succession. Id. at 358-59. The

 12
court recognized that the two statutes were not intended to modify or affect each other. See id. at

359.

 Similarly, here Appellants argue that the legal presumptions of paternity set forth in

Section 210.822.1 of the UPA govern paternity under the Probate Code. However, relying on

Nocita’s holding that the Probate Code rather than the UPA controls whether an illegitimate

child can inherit by intestate succession, we disagree with Appellants’ argument. See id. at 358-

59. The limits and legal presumptions set forth in the UPA do not likewise constrain the

application of the Probate code and should not be used to defeat a petitioner’s ability to prove

paternity for purposes Section 474.060. See id. at 359; cf. LeSage v. Dirt Cheap Cigarettes &

Beer, Inc., 102 S.W.3d 1, 4-5 (Mo. banc 2003) (because UPA is not exclusive means to establish

paternity, limits of UPA cannot be used to defeat determination of paternity in wrongful death

action). Instead, in this probate action, we apply the clear and convincing evidence standard as

set forth in Section 474.060 to establish paternity. As discussed above, Palmer met this clear and

convincing evidence standard.

 Point III is denied.

 Conclusion

 The judgment of the Probate court is affirmed.

 Robin Ransom, Presiding Judge

Sherri B. Sullivan, J., and Lisa P. Page, J., concur.

 13